HELEN M. HAMPTON, Plaintiff-Appellant, v. RICHARD E. CASHMORE *et al.*, Defendants (Thomas J. Zelenz *et al.*, Defendants-Appellees).

Second District    No. 2—93—0012

Opinion filed July 14, 1994.

Charles W. Smith and Suzanne A. Lindsay, both of Rosing, Applehans, Smith, Ericksen & Zeit, Ltd., of Waukegan, for appellant.

Peter M. Schlax, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Helen M. Hampton, filed a complaint in the circuit court of Lake County against defendants, Richard E. Cashmore, Thomas J. Zelenz, and the City of Waukegan (City), alleging negligent and careless acts and omissions arising from a vehicular intersection collision. At the time of the collision, plaintiff was being transported in an ambulance driven by Zelenz, who was acting in his capacity as an employee of the City, when it either struck or was struck by a pickup truck being driven by Cashmore. Plaintiff subsequently amended her complaint twice, adding the Minnesota Mining and Manufacturing Company as a defendant and amending her allegations against Zelenz and the City to include willful and wanton conduct. Zelenz and the City moved for summary judgment, and, approximately two months later, they moved to dismiss plaintiff's complaint on the ground that it was time barred under the more restrictive limitations period in the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8—101 (West 1992)) (Tort Immunity Act). The circuit court granted summary judgment in favor of Zelenz and the City and, on the same date, denied their motion to dismiss. Plaintiff timely appeals from the order granting summary judgment in favor of Zelenz and the City. Zelenz and the City have filed a cross-appeal from the trial court's denial of their motion to dismiss. The order plaintiff appeals from contains the requisite Supreme Court Rule 304(a) finding (see 134 Ill. 2d R. 304(a)), and neither Cashmore nor the Minnesota Mining and Manufacturing Company is a party to this appeal.

Plaintiff's sole issue on appeal is whether the trial court erred in determining that no issue of material fact existed on the issue of whether defendants' conduct was willful and wanton. In their cross-appeal, Zelenz and the City maintain that even if an issue of material fact were found to exist, the trial court erred in denying their

motion to dismiss because plaintiff's claim was time barred under the more restrictive limitations period applicable to public employees.

Before proceeding to the merits of the parties' respective contentions, it is necessary to consider this court's jurisdiction to hear defendants' "cross-appeal." During the pendency of this appeal, defendants' cross-appeal was dismissed on plaintiff's motion, and following reconsideration, it was reinstated. In her supplemental reply brief, which was filed after the reinstatement of defendants' cross-appeal, plaintiff renews her objection, contending that defendants' cross-appeal from the order denying its motion to dismiss was not appealable. Plaintiff reasons that because the denial of a motion to dismiss is an interlocutory order which does not finally dispose of an action (see, *e.g.*, *Chicago Health Clubs, Inc. v. Picur* (1987), 155 Ill. App. 3d 482, 487, *rev'd on other grounds* (1988), 124 Ill. 2d 1), defendants' failure to obtain a finding under Supreme Court Rule 308 (see 134 Ill. 2d R. 308) precludes review of defendants' cross-appeal. Defendants respond that this court has jurisdiction to hear their cross-appeal because they are entitled to urge any ground contained in the record which supports the validity of the trial court's judgment. We disagree entirely with plaintiff and partly with defendant.

●1 While it is true that appeals from interlocutory orders must fall within the purview of either Supreme Court Rule 307 or 308 (see 134 Ill. 2d Rules 307 (interlocutory appeals as of right), 308 (permissive interlocutory appeals)), plaintiff fails to recognize that an order remains interlocutory relative to its appealability only so long as no final order has been entered. Once a final order has been entered, all prior nonfinal orders become appealable. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433; *In re E.L.* (1987), 152 Ill. App. 3d 25, 30.) Although the record shows that the trial court denied defendants' motion to dismiss on the same date it granted defendants' motion for summary judgment, procedural logic would dictate that the denial of the motion to dismiss preceded the grant of summary judgment because a motion for summary judgment ordinarily assumes, for the purpose of the motion, that the complaint states a legally viable cause of action. (See generally *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 406.) Defendants, however, did not seek review of the denial of their motion to dismiss until after the grant of summary judgment in their favor. Therefore, with the entry of a final order disposing entirely of the controversy between plaintiff and defendants, the earlier denial of defendants' motion to dismiss became reviewable once plaintiff chose to appeal from the grant of summary judgment. Accordingly,

the absence or existence of a Supreme Court Rule 308 finding would have been of no consequence as applied to the present circumstances.

We note, however, that defendants' argument is not entirely correct because a cross-appeal does not lie from the denial of a motion to dismiss where no part of the trial court's final judgment was adverse to them. (See *Boles Trucking, Inc. v. O'Connor* (1985), 138 Ill. App. 3d 764, 772.) Because no part of the order granting summary judgment in favor of defendants was adverse to them, defendants' cross-appeal should be dismissed. This rule governing cross-appeals does not mean, however, that the issues raised by defendants are precluded from review. An appellee may advance any argument supported by the record to sustain the judgment of the trial court. (See *Boles*, 138 Ill. App. 3d at 772.) We initially address the propriety of the trial court's order granting summary judgment in favor of defendants, however, because an affirmance of the trial court's ruling would make it unnecessary to reach the issues raised by defendants.

Plaintiff's second amended complaint alleged that on or about August 16, 1989, she was a passenger in an ambulance being driven by Zelenz, who at the time was acting in his capacity as a fireman for the City of Waukegan. As the ambulance was proceeding northbound on Lewis Avenue near the intersection with Ridgeland, another vehicle, which was driven by Cashmore, was proceeding west on Ridgeland. It was further alleged that as a result of Cashmore's negligence and Zelenz's willful and wanton conduct, the vehicles collided at the intersection. Specifically, Zelenz willfully and wantonly failed to yield the right-of-way; stop for a red light; take evasive action to avoid a collision; reduce his speed to avoid an accident; keep a proper, or any, lookout for traffic crossing Lewis Avenue with the green light; and entered the intersection with little or no regard to traffic crossing Lewis Avenue with the green light. The City was joined on a theory of vicarious liability, and no issue of whether Zelenz was acting within the scope of his employment at the time of the accident was raised in the trial court.

In their motion for summary judgment, Zelenz and the City maintained that the deposition testimony of various witnesses conclusively established that no issue of material fact existed on the question of whether Zelenz was acting with either a deliberate intention to cause harm or an utter indifference for the safety of others. Citing portions of the same depositions, plaintiff responded that Zelenz's conduct was arguably willful and wanton because the evidence established the allegations of the complaint including, in particular, that Zelenz observed that the traffic light was red, proceeded into the southbound lanes of traffic, and collided with the pickup truck operated by Cashmore.

The depositions relied on by the parties reveal the following facts. Lewis Avenue is a four-lane, north-south road. Ridgeland, where it intersects Lewis Avenue, is a two-lane roadway running east-west. The intersection is controlled by traffic signals, and there are no dedicated turn lanes on Lewis Avenue. It was undisputed that the traffic signals were operational at the time of the accident, and weather and road conditions were not a factor. The parties do not dispute that, at the time of the accident, the ambulance's siren and emergency lights were activated.

Gary Grant, an eyewitness, testified that he was driving southbound on Lewis Avenue in the inside lane approaching Ridgeland. When he was approximately one block north of the intersection, he observed, several blocks to the south, a northbound ambulance with its emergency lights activated. As the ambulance entered the intersection, he observed that the traffic light was red and that the ambulance did not appear to be traveling "excessively fast." When asked whether the ambulance slowed, relative to its speed when he first observed it, before entering the intersection, Grant stated that he did not believe so. Grant estimated that the ambulance was traveling below the speed limit, perhaps 30 or 35 miles per hour.

Grant testified further that he first observed Cashmore's pickup truck when it was a "few car lengths" from the intersection. He was unable to say whether the pickup was traveling above or below the speed limit. Just prior to the collision with the ambulance, Grant observed the pickup truck slam on its brakes. He opined that neither driver saw the other prior to the collision. Grant further stated that the front of the truck hit the rear, right-hand side of the ambulance.

Following the collision, the ambulance proceeded north, apparently out of control, rolled over, and came to rest approximately 100 feet north of Grant's position. Grant believed that the ambulance was in the right-hand northbound lane prior to entering the intersection, and he would say that the ambulance entered the intersection before the pickup truck.

Rodney Hall, another eyewitness, testified that at the time of the accident he was sitting on his porch, which was located approximately two blocks south of Ridgeland on the west side of Lewis. Hall heard a siren and observed the emergency lights on the ambulance. When asked whether he saw the ambulance slow down before entering the intersection, Hall responded, "I think it did. [The ambulance driver] probably saw [the pickup] truck inching out and he should have slowed down. Whether he did or not, I couldn't really say."

Hall further stated that he observed the ambulance in the inside

right-hand lane as it proceeded northbound on Lewis Avenue. He estimated the speed of the ambulance at 30 miles per hour. Although he did not actually see the vehicles collide, he did observe the ambulance swerve to the left and to the right before flipping over on its side. The ambulance came to rest approximately 150 feet north of the intersection.

Thomas Zelenz, the ambulance driver, testified that when transporting patients he would not run red stoplights, but he would slow down and proceed with caution. As long as the intersection was clear, the ambulance could proceed against a red light.

Zelenz stated that he was driving in the inside northbound lane on Lewis Avenue as he approached the intersection. At the time, Zelenz believed that his speed was 35 miles per hour. Because he observed a red light, Zelenz stated that he slowed the vehicle to approximately 10 to 15 miles per hour. Upon reaching the intersection, he slowed down, looked both ways, and proceeded through thinking it was clear.

Zelenz further recalled that he entered the southbound lanes heading north, which was standard procedure to get around traffic. As he looked, he believed that the intersection was clear and increased his speed so as to continue through the intersection. At that time, he noticed the other vehicle heading west on Ridgeland, and it appeared to him that the vehicles were going to collide. To avoid the collision, Zelenz increased his speed and tried to veer to the left.

Zelenz recalled that, as he swerved to the left, the ambulance was struck in the middle right-side of the passenger box. As the vehicle "teetered," Zelenz observed oncoming traffic in the southbound lanes. He turned sharply to the right which, in his opinion, caused the vehicle to roll onto its right side.

Richard Cashmore, the driver of the westbound pickup truck, testified that as he approached the intersection he heard no sirens and observed no emergency lights. According to Cashmore, the traffic signal for Ridgeland was green. About three-fourths of the way through the intersection, Cashmore observed a big red box in front of him, and the next thing he knew was that the other vehicle was going down the opposite side of the road "back and forth" and finally tipped over. Cashmore stated that he saw the ambulance for a split second before he collided with it in the southbound lanes of Lewis Avenue.

Odester Jones testified that she was proceeding southbound on Lewis Avenue when she first observed the ambulance several blocks to the south of the intersection. As the ambulance entered the

intersection, Jones recalled the traffic signal as being green. Jones stated that the ambulance was "going pretty fast." She thought its speed was around 30 to 35 miles per hour, and it appeared that the ambulance was traveling in excess of the speed limit. Jones was unable to recall, however, whether the ambulance slowed before it entered the intersection, and she did not actually observe the collision.

Louis Milewski, a fire fighter-paramedic riding in the ambulance, testified that he heard the ambulance siren operating before entering the intersection, and, in his opinion, the ambulance was not traveling at an excessive speed. The only relevant testimony plaintiff provided was that she did not know whether the ambulance slowed before the collision with the other vehicle.

On appeal, plaintiff maintains that issues of material fact remain as to whether Zelenz willfully and wantonly failed to reduce his speed to avoid an accident and maintain a proper lookout for crossing traffic. Defendants argue that even when the evidence is viewed in a light most favorable to plaintiff, the undeniable conclusion is that Zelenz acted neither with deliberate intention to harm plaintiff nor with a conscious disregard for her safety.

The principles governing our *de novo* review of motions for summary judgment are well established (see, *e.g.*, *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11) and need not be repeated here. The legislature has generally insulated public entities and their ambulance operator employees from negligence liability for decisions made and actions taken while operating a motor vehicle in response to an emergency. (745 ILCS 10/5—106 (West 1992).) Section 5—106 of the Tort Immunity Act provides:

"§ 5—106. Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." (745 ILCS 10/5—106 (West 1992).)

One reason for this limited immunity is that if an ambulance operator is burdened with potentially devastating personal liability for actions taken in the course of responding to an emergency, it is likely that his or her performance would be hampered. *Buell v. Oakland Fire Protection District Board* (1992), 237 Ill. App. 3d 940, 944.

Section 1—210 of the Tort Immunity Act defines willful and wanton conduct as:

"a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1992). *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 572.

As a preliminary point, we note that in *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, this court recognized that the statutory definition of willful and wanton conduct was nearly identical with the common-law definition espoused in *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, with the exception that it was necessary for plaintiffs to plead a course of action which proximately caused the plaintiff's injuries. (See *Benhart*, 218 Ill. App. 3d at 559.) The present case does not raise any issue relating to the course of action requirement. Because the *O'Brien* common-law definition and the statutory definition are nearly identical in all other respects (*Benhart*, 218 Ill. App. 3d at 559; see also *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 449 (noting that statutory definition was virtually identical to common-law pleading requirements), we are not inclined to limit our consideration of relevant case law only to those cases applying the statutory definition.

In describing the qualitative difference between negligence and willful and wanton conduct, our supreme court has noted that the latter requires a "heightened state of mind." *Burke*, 148 Ill. 2d at 448.

 " 'A state of mind different from that needed in ordinary and gross negligence is required and can be found where aggravating circumstances are present, such as where there is a "conscious and deliberate disregard for the rights or safety of others." ' " *Burke*, 148 Ill. 2d at 449, quoting *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 458, quoting *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1095.

In determining whether willful and wanton conduct exists in a given case, it is necessary to scrutinize closely the facts as disclosed by the evidence. (*Mower v. Williams* (1949), 402 Ill. 486, 489.) Because the question necessarily turns on a question of degree, "a hard and thin line definition should not be attempted." (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 430.) Whether a party is guilty of willful and wanton conduct is generally left to the trier of fact (*Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 275); however, the question

may be decided as a matter of law (*Siegmann v. Buffington* (1992), 237 Ill. App. 3d 832, 834; *Toller v. Plainfield School District 202* (1991), 221 Ill. App. 3d 554, 558). Summary judgment is properly granted where the acts of the local public entity cannot be characterized as willful and wanton conduct. *Dunbar v. Latting* (1993), 250 Ill. App. 3d 786, 793.

Viewing the evidence in a light most favorable to plaintiff, the record established that the ambulance driven by Zelenz was traveling at a speed of 35 miles per hour with its siren and emergency lights activated as it approached the intersection. Grant testified that he did not believe that the vehicle slowed when it entered the intersection. Zelenz admitted that he entered the intersection against a red light.

●2 Although Zelenz's conduct could arguably be characterized as negligence, the issue is not whether he failed to exercise reasonable care in the operation of the ambulance when he entered the intersection; rather, it is whether Zelenz's conduct, as presented in the various depositions, could arguably be characterized as willful and wanton conduct. We conclude, as a matter of law, that the record presents insufficient evidence to raise a question of fact relating to whether Zelenz willfully and wantonly failed to slow upon reaching the intersection or maintain a proper lookout for other traffic. (See *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587.) Although plaintiff was not required to prove her case at the summary judgment stage, she must nonetheless present some factual basis which would arguably entitle her to judgment. *Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 603.

First, no evidence exists to support a reasonable conclusion that Zelenz acted with a deliberate intention to harm plaintiff. His uncontroverted testimony established that upon his first observing the pickup truck Zelenz increased his speed and swerved to avoid colliding with it. Other witnesses testified that they observed the ambulance swerve at or near the point of impact.

Second, the testimony provided no evidentiary basis to establish a triable issue of fact on the question of whether Zelenz, while operating the ambulance, acted with utter indifference or conscious disregard for plaintiff's safety. Although Grant testified that he did not believe the ambulance slowed when it entered the intersection, there is no evidence, circumstantial or otherwise, in the record that Zelenz proceeded with utter indifference to, or in conscious disregard of, plaintiff's safety.

This court has stated on at least one occasion that in cases involving automobile accidents, a reckless disregard for the safety of

others would include demonstrating that defendant had notice that would alert a reasonable person that a substantial danger was involved but failed to take reasonable precautions under the circumstances. (*Valiulis v. Scheffels* (1989), 191 Ill. App. 3d 775, 789.) While it is true that any traffic intersection at a given moment might present a substantial danger, the record here does not establish that Zelenz had notice of a substantial danger and failed to exercise reasonable precautions under the circumstances. Zelenz testified that he did not see the pickup truck until he was in the intersection. The record contains no evidence that Zelenz was aware of the pickup truck's location as it approached the intersection. His testimony, taken together with the lack of any evidence that his view of the intersection was obstructed or otherwise impaired, militates in favor of the conclusion that Zelenz did not enter the intersection with an utter indifference to or in conscious disregard of plaintiff's safety, or otherwise manifest the heightened state of mind requisite to a finding of willful and wanton conduct.

Furthermore, there is nothing in the record which raises a question of fact regarding whether Zelenz willfully and wantonly failed to maintain a proper lookout for traffic. The only evidence presented was Zelenz's own uncontroverted testimony that he looked both ways before entering the intersection. Accordingly, we conclude that the trial court properly granted summary judgment in favor of Zelenz and the City.

Finally, as a result of our disposition, it is unnecessary to reach defendants' "cross-appeal" contentions because a resolution of those issues would have no bearing on the ultimate outcome.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.