# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-3978

DAWN E. CARTER, now known as
DAWN E. TROJAOVICH,                           *Plaintiff-Appellant*,

v.

RANDALL SIMPSON, now known as
DUDLEY RANDALL R. SIMPSON,

                                              *Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5785—**James B. Zagel**, *Judge*.

ARGUED APRIL 23, 2003—DECIDED MAY 13, 2003

Before BAUER, MANION, and DIANE P. WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. In the early morning of November 20, 1995, a squad car driven by Randall Simpson, a DuPage County Sheriff's Deputy, collided in an intersection with an automobile driven by Dawn Carter. Carter sued Simpson in federal court, raising two state-law claims and one federal claim: negligence, willful and wanton conduct, and liability under 42 U.S.C. § 1983 for depriving her of substantive due process. The district court granted summary judgment for Simpson on all three claims. For the reasons explained below, we affirm in part and reverse and remand in part.

The parties do not dispute the following facts. Shortly before 7:00 a.m. a police dispatcher radioed to Sheriff's Deputy Richard Morgan to investigate a "2-11" call, which refers to a reported death. Simpson, who was "acting sergeant" at the time, overheard the dispatch and also proceeded to the reported location. He activated his lights and sirens as he was heading eastbound on Butterfield Road. Traffic on Butterfield was stopped at a red light at Park Boulevard. To avoid the stopped traffic, Simpson crossed a median and proceeded east in the westbound lanes. He attempted to drive through the intersection at Park against the red light. Carter, meanwhile, was driving through the intersection northbound on Park. Other automobiles traveling on Park had stopped. (There is some dispute, however, as to whether another automobile passed through the intersection directly ahead of Carter.) In the intersection the front of Simpson's squad car collided with the driver's side of Carter's automobile (which was traveling at approximately 30-35 mph); both cars then collided with other cars stopped in the westbound lanes on Butterfield.

The parties dispute whether Simpson slowed down before entering the intersection and the speed at which he was traveling when he entered the intersection and collided with Carter. In his deposition, Simpson estimated that he was traveling at 15-25 mph as he approached the intersection, slowed to 3-5 mph as he moved closer, and came to a "rolling stop" but did not stop completely. He explained that he checked the intersection, and believing it to be clear, accelerated again to 15-25 mph and proceeded through the intersection. He saw Carter's automobile for a "split second" only, just before impact.

Three witnesses, however, testified at depositions and gave accounts that differed from Simpson's. First, Sheila Willis (whose car was stopped in the left-turn lane on Park) testified that Simpson never stopped or slowed down

before entering the intersection, and she estimated his speed to be 40-50 mph. Second, Hao Zhong (whose car was stopped in a westbound lane on Butterfield) testified that Simpson was traveling at approximately 50 mph as he approached the intersection. But he explained that he did not see the collision and could not be certain whether Simpson stopped or slowed down before entering the intersection. Third, Emily Vesely (whose car also was stopped in a westbound lane on Butterfield) testified that Simpson never stopped or slowed before entering the intersection. She also testified that Simpson was "driving like a maniac"—which she explained meant that he was driving fast. She first estimated his speed to be 40-45 mph, but she later explained that she could not be sure of the precise speed and that it might have been 35-40 mph. In addition to these witnesses, the officer who investigated the crash explained that the stopped traffic on Butterfield may have obstructed Carter's ability to see Simpson enter the intersection.

Carter originally filed a lawsuit in state court against Simpson, DuPage County, and the DuPage County Sheriff. After a number of proceedings, *see Carter v. DuPage County Sheriff*, 710 N.E.2d 1263 (Ill. App. Ct. 1999), and a voluntary dismissal, Carter brought this lawsuit against Simpson in July 2001. She alleged Simpson's conduct was negligent, willful and wanton, and deprived her of substantive due process. The district court granted summary judgment for Simpson, concluding that Simpson had immunity for any alleged negligent conduct and that Simpson's conduct could qualify as neither willful and wanton nor a deprivation of substantive due process.

On appeal Carter challenges the district court's decision with respect to all three claims. At oral argument, counsel for both parties explained that the state-law claims are the primary claims in this lawsuit (we note that diversity jurisdiction exists); therefore, we discuss those claims first

and then discuss the federal claim. We review the district court's decision *de novo*, construing the evidence and drawing reasonable inferences in Carter's favor. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides immunity for government employees responding to emergency calls:

> Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility.

745 ILCS 10/5-106; *see Young v. Forgas*, 720 N.E.2d 360, 364 (Ill. App. Ct. 1999). On appeal Carter challenges immunity on the ground that Simpson was not responding to an "emergency call." Simpson testified that as "acting sergeant" he was required to respond to "2-11" death calls and that "2-11" calls were indeed emergency calls, which under the circumstances required him to proceed with lights and sirens. He also testified that he received a dispatch that the fire department had requested an officer "expedite to the scene." Another officer also testified that it would be appropriate to proceed to a "2-11" call with lights and sirens. Carter failed to offer any evidence to contradict these conclusions. *See Young*, 720 N.E.2d at 365-66. In addition, she admitted in her response to Simpson's statement of facts under Local Rule 56.1 that Simpson was responding to a death call and that death calls are emergency calls. *See Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). Thus, the district court concluded correctly that Simpson was responding to an emergency call and therefore had immunity for any alleged negligence on his part.

But such immunity does not extend to conduct that is willful and wanton. 745 ILCS 10/5-106. Carter argues that three witnesses—Willis, Zhong, and Vesely—provided sufficient evidence from which a reasonable jury could conclude that Simpson's conduct was willful and wanton in driving through the intersection, in the wrong lane, against the red light, without stopping or slowing down. Simpson argues that as a matter of law his conduct was not willful and wanton. Under Illinois law conduct is willful and wanton if it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210; *Chapman*, 241 F.3d at 847. Whether conduct is willful and wanton is a factual question. *Young*, 720 N.E.2d at 367-68.

Illinois case law is unclear on what conduct by a driver of an emergency vehicle may qualify as willful and wanton. Simpson relies on two Illinois cases, both involving automobile accidents by officials responding to emergency calls, to support his contention that summary judgment was proper: *Sanders v. City of Chicago*, 714 N.E.2d 547 (Ill. App. Ct. 1999) and *Hampton v. Cashmore*, 637 N.E.2d 776 (Ill. App. Ct. 1994). *Sanders*, however, is inapposite. In *Sanders* the court was reviewing whether sufficient evidence supported a jury's finding that conduct by a police officer—striking a pedestrian with his squad car—was not willful and wanton. 714 N.E.2d at 555. The court construed conflicting evidence in the officer's favor, concluding that the officer slowed down and checked for oncoming cars and that "a jury could determine from such evidence that [the officer] was not behaving in a willful and wanton manner." *Id.* This case, by contrast, arises not at a post-verdict stage but rather at summary judgment, and consequently Simpson (as movant) does not receive the benefit of having conflicting evidence construed in his favor.

More to the point, Simpson also analogizes his conduct to that of an ambulance driver in *Hampton*, whose conduct was held as a matter of law to be not willful and wanton. 637 N.E.2d at 782. The driver, responding to an emergency call with lights and siren activated, entered an intersection and collided with another automobile. *Id.* The driver testified that he slowed to 15-25 mph before entering the intersection; another witness testified that the ambulance was traveling at approximately 35 mph and did not slow down before entering the intersection. *Id.* The court concluded that even if the driver did not slow down and was traveling at 35 mph, these facts could not establish that the driver proceeded with utter indifference or conscious disregard for the plaintiff's safety. *Id.*

However, a more recent, and highly analogous, Illinois appellate case "disagreed" with *Hampton*. *See Young*, 720 N.E.2d at 367. In *Young*, the driver of a fire-department vehicle, on an emergency call, collided with another automobile after proceeding through an intersection against a red light. *Id.* The driver testified that he stopped and checked the intersection before proceeding; one witness testified that the driver never came to a complete stop and traveled at approximately 15 mph through the intersection; and a second witness testified that the driver never slowed down or stopped and was traveling 30-40 mph as he entered the intersection. *Id.* The court concluded that the trier of fact should examine this evidence to "determine whether [the driver] consciously made a decision to proceed against a red light into a crowded intersection" because "[s]uch conduct would constitute willful and wanton conduct." *Id.* The court discussed *Hampton*, explaining that it could be interpreted to hold that a "driver of an emergency vehicle may proceed through an intersection against a red light between 10 and 35 miles per hour without fear of liability." *Id.* The court "disagreed," concluding that a jury could find that such conduct reflected "conscious disregard for the safety of others." *Id.*

Like *Young*, there is conflicting evidence here as to whether Simpson slowed down before entering the intersection against the red light and the speed at which he was traveling. Testimony that Simpson never slowed down and was "driving like a maniac"—regardless of whether that means he was traveling 35, 40, or 45 mph—plainly conflicts with Simpson's account that he slowed to 3-5 mph and came to a "rolling stop." And given the disagreement between *Young* and *Hampton*, we disagree with Simpson that his conduct, when construing the evidence in Carter's favor, as a matter of law could not qualify as "conscious disregard." We conclude that a reasonable jury could find such conduct willful and wanton. Therefore, the district court erred in granting summary judgment on this claim.

Finally, Carter contends that Simpson's conduct also deprived her of substantive due process. Conduct by a government official creates a cognizable substantive-due-process claim when it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *Bublitz v. Cottey*, No. 02-3400, 2003 WL 1826554, at *4 (7th Cir. April 9, 2003). In situations where actual deliberation is possible, conduct that is "deliberately indifferent" may in certain circumstances "shock the conscience"; in emergency situations (such as high-speed chases), however, conduct "shocks the conscience" only if there was intent to cause harm. *Lewis*, 523 U.S. at 849; *see also Bublitz*, 2003 WL 1826554, at *5; *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998). Although Simpson was not engaged in a high-speed chase (as in *Lewis*), he was responding to an emergency call. Because there was no evidence that he intended to cause any harm, the district court correctly granted summary judgment for Simpson on this claim.

In sum, the district court's judgment on the negligence and substantive-due-process claims is AFFIRMED; the judgment on the willful-and-wanton-conduct claim is

REVERSED and REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*