THIRD DIVISION
December 28, 2007

1-06-3392

RANDAL WILLIAMS and MARCUS BROWN,     )     Appeal from the
                                                 )     Circuit Court of
        Plaintiffs-Appellants,      )     Cook County.
                                                 )
               v.                        )
                                               )
THE CITY OF EVANSTON and JEFFREY     )
GONZALES,                            )     Honorable
                                             )     Donald J. Suriano,
        Defendants-Appellees.      )     Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

On August 14, 2004, a City of Evanston ambulance driven by defendant Jeffrey Gonzales, a City of Evanston firefighter/EMT, collided with a vehicle driven by plaintiff Randall Williams. Plaintiff Marcus Brown was a passenger in Williams' vehicle. After plaintiffs filed a four-count complaint based solely on negligence, they filed an amended complaint, which added four counts based on willful and wanton conduct.

The circuit court granted defendants' motion to dismiss plaintiff's four counts based on negligence. Thereafter, the circuit court granted defendants' motion for summary judgment on the remaining four counts. The circuit court based its ruling on its determination that plaintiffs failed to set forth evidence that Gonzales drove the ambulance in a willful and wanton manner.

1-06-3392

Thus, the circuit court found defendants were immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2006)).  Plaintiffs now appeal.

BACKGROUND

On August 14, 2004, plaintiffs Williams and Brown were traveling westbound on Oakton Street toward the intersection at Sherman Avenue in Chicago, Illinois.  At the same time, defendant Gonzales was traveling southbound on Sherman Avenue toward the intersection.  Gonzales, a City of Evanston firefighter/EMT, was driving a City of Evanston ambulance in the midst of an emergency call.

Although southbound traffic on Sherman had a stop sign, westbound and eastbound traffic on Oakton did not have stop signs.[1]  The speed limit on Sherman was 25 miles per hour.

During his deposition, Williams testified that his car windows were up and the radio was off as he drove westward on Oakton toward Sherman.  Williams stated that there was no traffic.  He did not recall whether he heard a siren.

Williams testified that he was traveling approximately 20 to 25 miles per hour in the right lane of the two westbound lanes prior to entering the intersection of Oakton and Sherman.  He stated that he knew traffic on Sherman had a stop sign at the

---

[1]The record indicates that traffic was one way southbound on Sherman Avenue on the south side of the intersection.

-2-

intersection. He further confirmed that an apartment building on the northeast corner of Oakton and Sherman blocked his view of southbound traffic. However, he passed the building prior to entering the intersection and could see southbound traffic.

Williams stated he never saw the ambulance before the collision, and he did not recall hearing a siren or brakes. He confirmed that he was still driving 20 to 25 miles per hour at the time of the collision. Williams opined that based on the impact, the ambulance was traveling about 45 to 50 miles per hour before the collision.

Williams testified that the ambulance struck the front of his vehicle. After the initial impact created a bounce, the ambulance hit the rear of his vehicle as well. The vehicles' collision sent Williams' car "south to southeast" until it struck a tree with a heavy impact.

Williams stated that he did not speak with anyone at the scene following the accident except to the police officer who asked for his license. He did not remember speaking to a police officer at the hospital as he was "out of it." Williams confirmed that he received a traffic ticket due to the accident.

Brown testified during his deposition that on August 14, 2004, he was in the passenger seat of the car driven by Williams, his half-brother. He stated that the vehicle's windows were up and the music was off as they drove westbound in the right lane on Oakton toward Sherman. Brown estimated that they were

traveling about 20 to 25 miles per hour and asserted that he did not see any other vehicles ahead of their vehicle.

When asked whether he saw another vehicle out of the corner of his eye before the collision, Brown testified that he did not recall as he got hit in the head during the collision. He opined, however, that based on the impact, the ambulance was traveling 40 or 50 miles per hour prior to the collision.

During the collision, Brown suffered a head injury, which left him dazed and in need of stitches. Paramedics helped him out of the car and informed him that he was bleeding.

Brown also testified that he went to traffic court with his brother. The judge threw out the ticket given to Williams.

During his deposition, Gonzales testified that on August 14, 2004, he was a firefighter/EMT and was training to be a paramedic. He asserted that he had driven the ambulance in emergency situations a hundred times and that he never drove over the posted speed limit on those occasions.

Prior to the accident, Gonzales was driving southbound on Sherman towards Oakton. He confirmed that Sherman is a two-way street that becomes a one-way southbound street south of Oakton. He and his partner were in the midst of an emergency call involving a battery victim. He stated that he knew there was a stop sign for southbound traffic on Sherman and that there were no stop signs at the intersection for traffic on Oakton. Although Gonzales did not bring the ambulance to a complete stop

at the intersection, he testified that he slowed the vehicle to 15 to 20 miles per hour as he entered the intersection and slowed the ambulance further to about 5 miles per hour immediately before the collision. Gonzales asserted that he had activated the ambulance's lights and siren prior to the collision.

Gonzales stated that he looked left then right before he entered the intersection at Sherman and Oakton, but he did not see Williams' vehicle. When asked whether there was anything that blocked his view, Gonzales acknowledged that a row of trees and an apartment building obstructed his view of traffic to the left. However, he asserted that he crept up a little past the stop sign and looked left for westbound traffic, but he did not see plaintiffs' vehicle.

Gonzales had no estimate as to Williams' speed. He testified that the front of Williams' vehicle hit the driver's-side door of the ambulance. Gonzales denied that his partner warned him about plaintiffs' vehicle and stated that he told his partner after the collision that he did not see plaintiffs' vehicle prior to impact.

Gonzales confirmed that his deposition testimony was similar to the testimony he provided in traffic court during the proceedings on Williams' traffic ticket. However, he did not testify before the City of Evanston Accident Review Board, which determined that the accident was preventable. Gonzales did not agree with the review board's finding.

He stated that the ambulance was propelled 40 to 50 feet to the right as a result of the collision. He opined that plaintiffs were speeding.

Ronald Gannon's deposition testimony provided that he was a fire captain with the Evanston fire department on August 14, 2004, but he was stationed at another fire house on the date of the accident. Gannon was a division chief at the time of his testimony.

Gannon asserted that drivers of fire department vehicles must abide by the Illinois Vehicle Code (625 ILCS 5/1-100 et seq. (West 2006)). However, Gannon stated that although an ambulance driver should slow down as he approached a stop sign during an emergency situation, the driver would not necessarily have to stop if traffic was not present or had halted in response to the emergency vehicle. Gannon did not believe that Gonzales did anything wrong on August 14, 2004, and he did not know why the review board deemed the accident preventable.

During her deposition, Katherine Kuller testified that she was at her friend's apartment in the building at 800 Oakton at the time of the accident. The building is located on the southwest corner of the intersection of Oakton and Sherman.

Kuller stated that the accident occurred about 6 a.m. on a Saturday morning. She asserted that it was not raining. Although Kuller did not see the accident occur, she heard a "[w]hoop-whoop-whoop-whoop-whoop," which she assumed was a siren

of a medical vehicle, followed by a "boom." In response, she ran to a window, saw the two vehicles, got dressed, and ran downstairs. She confirmed that the windows of the apartment were open. She did not hear any tire squeals prior to hearing the collision.

Finally, Mary Lawrence's deposition testimony disclosed that she lived at 802 Oakton on August 14, 2004. About 6 a.m. that morning, she was lying in bed when she heard a "siren going off." Saint Francis Hospital is about a block from her apartment, and the siren sounded as if it was coming from the north and heading toward the hospital. Lawrence testified, "I, you know, I heard a squealing of tires and then I heard the crash." Upon hearing the crash, Lawrence got out of her bed and ran to her dining room window. She saw the ambulance had knocked over a light pole and was up against a tree. After calling 9-1-1, Lawrence got dressed and went outside. She heard one of the "paramedics" tell the other "paramedic" that he had not seen the other driver.

Following the completion of the parties' depositions, defendants filed a motion for summary judgment. Therein, defendants argued that no evidence existed that Gonzales acted in a willful and wanton manner prior to the collision with plaintiffs. As such, defendants argued that plaintiffs could not establish that defendants violated a duty of care to plaintiffs under sections 2-202 (745 ILCS 10/2-202 (West 2006)) and 5-106 (745 ILCS 10/5-106 (West 2006)) of the Tort Immunity Act.

Plaintiffs countered that a genuine issue of material fact existed as to whether Gonzales acted in a willful and wanton manner, and thus the circuit court should deny defendants' motion.

At a hearing on the motion, plaintiffs presented photographs of the vehicles following the collision and argued that the photographs demonstrated that the ambulance had been speeding prior to the accident. Following arguments, the circuit court granted the motion for summary judgment. In doing so, the circuit court stated:

> "If it's a question of speed, you're asking to Court to [sic] -- I can't conclude what speed they're going.
>
> Maybe if you had an expert or something come in and say what these photographs depict, but the only evidence I have is that he's creeping through the stop sign.
>
> You allege that he is violating a traffic law. Apparently he is, but I don't think it may be negligence. I don't think that is conduct that rises to willful and wanton conduct when an emergency vehicle is creeping through the stop sign.
>
> As far as these pictures, I can't make any determination as to circumstantial

evidence.  I am going to grant the motion based on the fact that there is no evidence of any willful and wanton conduct.  Thank you."

Plaintiffs have appealed.

ANALYSIS

In this court, plaintiffs contend that the circuit court erroneously granted defendants' motion for summary judgment. Plaintiffs argue that a genuine issue of material fact existed as to whether Gonzales operated the ambulance in a willful and wanton manner.

Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and that the nonmovant is entitled to judgment as a matter of law.  Abrams v. City of Chicago, 211 Ill. 2d 251, 257 (2004).  Our review is *de novo*. Abrams, 211 Ill. 2d at 258.

We initially note that although defendants filed their motion for summary judgment pursuant to sections 2-202 and 5-106 of the Tort Immunity Act, only section 5-106 applies to the case at bar.  Whereas section 2-202 concerns the execution or enforcement of law, which was not an issue here, section 5-106 provides:

"Except for willful or wanton conduct,

> neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2006).

In the case at bar, there was no dispute that Gonzales was a public employee in the midst of an emergency call within the meaning of the Tort Immunity Act. As such, plaintiffs had to present evidence that Gonzales operated the ambulance in a willful and wanton manner.

Section 1-210 of the Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2006). Our supreme court has similarly defined "willful and wanton conduct" as "a course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's *** safety or property of others." Pfister v. Shusta, 167 Ill. 2d 417, 421 (1995). Further, our supreme court has described willful and wanton conduct as " 'a

-10-

hybrid between acts considered negligent and behavior found to be intentionally tortious. *** Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing.' " Pfister, 167 Ill. 2d at 422, quoting Ziarko v. Soo Line R.R. Co., 161 Ill. 2d 267, 275-76 (1994).

Whether conduct is willful and wanton is ultimately a question of fact. Young v. Forgas, 308 Ill. App. 3d 553, 562 (1999), citing Calloway v. Kinkelaar, 168 Ill. 2d 312, 326 (1995); Doe v. Calumet City, 161 Ill. 2d 374, 390 (1994). Nonetheless, a court may hold as a matter of law that a public employee's actions do not amount to willful and wanton conduct where no other contrary conclusion may be drawn from the record presented. Young, 308 Ill. App. 3d at 562.

Illinois law is unsettled as to what actions taken by an emergency vehicle driver constitute willful and wanton conduct. See Carter v. Simpson, 328 F.3d 948, 951 (7th Cir. 2003). The parties discussed the leading Illinois cases in their briefs. As such, we review those cases in analyzing the circuit court's ruling.

In Hampton v. Cashmore, 265 Ill. App. 3d 23 (1994), an ambulance passenger sued the ambulance operator and the City of Waukegan for damages when she was injured in a collision between the ambulance and a truck. The circuit court granted defendants'

motion for summary judgment based on the Tort Immunity Act. The plaintiff appealed based on her contention that a genuine issue of material fact existed as to whether the defendants' conduct was willful and wanton.

On appeal, the court upheld the trial court's ruling. The reviewing court noted that two eyewitnesses testified that they saw the ambulance's lights and siren were activated as it entered the intersection against a red light at of a rate of speed of 30 to 35 miles per hour. Hampton, 265 Ill. App. 3d at 27-28. A third eyewitness testified that the ambulance entered the intersection when the light was green, but also asserted the ambulance was traveling about 30 to 35 miles per hour. Hampton, 265 Ill. App. 3d at 28-29. The plaintiff testified that he neither saw the ambulance's lights nor heard its siren and that he had the green light. Hampton, 265 Ill. App. 3d at 28. The ambulance operator admitted that he ran the red light, but asserted that he slowed the ambulance from 35 miles per hour to about 15 miles per hour when entering the intersection. Hampton, 265 Ill. App. 3d at 28. Viewing that evidence in a light most favorable to the plaintiff, the reviewing court upheld the circuit court's ruling. In doing so, the reviewing court stated:

> "We conclude, as a matter of law, that the
> record presents insufficient evidence to
> raise a question of fact relating to whether
> [the ambulance operator] willfully and

> wantonly failed to slow upon reaching the
> intersection or maintain a proper lookout for
> other traffic." Hampton, 265 Ill. App. 3d at
> 31.

Similarly, in Young v. Forgas, 308 Ill. App. 3d 553 (1999), a motorist involved in a collision with a City of Springfield fire department vehicle filed a multicount complaint against the firefighter who drove the vehicle and the City of Springfield. Like Hampton, the trial court granted the defendants' motion for summary judgment on the counts based on willful and wanton conduct due to the Tort Immunity Act. The plaintiff appealed.

On appeal, in analyzing the counts based on willful and wanton conduct, the court disagreed with Hampton. Young, 308 Ill. App. 3d at 563-64. The court noted that as in Hampton, an eyewitness testified that she saw the fire department vehicle enter the intersection against a red light without slowing from a speed of 30 to 40 miles per hour. Young, 308 Ill. App. 3d at 564. This testimony contradicted the testimony of the defendant driver, who testified he stopped and checked the intersection before proceeding against the red light, and two eyewitnesses, who stated that defendant slowed before the accident. Young, 308, Ill. App. 3d at 564.

Unlike Hampton, the reviewing court determined that the conflicting testimony resulted in the dispute of material facts. Young, 308 Ill. App. 3d at 564. As such, the reviewing court

found that the issue was one for a jury and, thus, reversed the circuit court's grant of summary judgment on the counts of willful and wanton conduct. Young, 308 Ill. App. 3d at 564.

The United States Court of Appeals for the Seventh Circuit addressed the disagreement between Hampton and Young in Carter, 328 F.3d at 948. Therein, a motorist filed a three-count suit, including one count of willful and wanton conduct, against a City of Evanston police officer for damages suffered in a vehicular collision with the police officer's car. After the district court granted the defendants' summary judgment, the plaintiff appealed.

On appeal, the Seventh Circuit addressed the district court's ruling of summary judgment on the count of willful and wanton conduct. In doing so, the Seventh Circuit noted that the agreed facts showed that the police officer activated his vehicle's emergency lights and siren, crossed a median, drove eastbound in westbound lanes to avoid traffic stopped at a red light, and collided with the plaintiff's vehicle in the intersection at the light. Carter, 328 F.3d at 949. The parties, however, disputed whether the police officer slowed down before he drove into the intersection. Although the police officer testified that he slowed from 15 to 25 miles per hour to 3 to 5 miles per hour when he entered the intersection, three eyewitnesses testified that the police officer was driving anywhere from 35 to 50 miles per hour at all times. Carter, 328

1-06-3392

F.3d at 950.

In analyzing Illinois case law on what actions by an emergency vehicle driver constituted willful and wanton conduct, the Seventh Circuit acknowledged the disagreement between Hampton and Young. Carter, 328 F.3d at 951-52. The court stated:

> "And given the disagreement between Young and Hampton, we disagree with [the defendant] that his conduct, when construing the evidence in [the plaintiff's] favor, as a matter of law could not qualify as 'conscious disregard.' We conclude that a reasonable jury could find such conduct willful and wanton. Therefore, the district court erred in granting summary judgment on this claim." Carter, 328 F.3d at 952.

In this court, plaintiffs, relying on Young and Carter, contend that given their testimony and the testimony of Kuller and Lawrence, there remains a genuine issue of material fact as to whether Gonzales drove in a willful and wanton manner. Defendants, relying on Hampton, counter that summary judgment was appropriate given Gonzales' testimony and the speculative nature of plaintiffs' testimony as to the ambulance's speed.

We agree with defendants. Even viewing the evidence in the light most favorable to plaintiffs, we cannot agree with their contention that a genuine issue of material fact existed

-15-

regarding willful and wanton conduct.

In reaching that conclusion, we first address the circuit court's dismissal of plaintiffs' photographs of the damaged vehicles as evidence of the ambulance's rate of speed prior to the vehicles' collision.  The admissibility of photographs normally falls within the discretion of the trial court. DiCosola v. Bowman, 342 Ill. App. 3d 530, 534 (2003), citing Bullard v. Barnes, 102 Ill. 2d 505, 519 (1984).  Given that standard, this court has previously upheld circuit court rulings dismissing photographic evidence of a plaintiff's vehicle damaged in a collision where the circuit courts found the photographs to be irrelevant absent expert testimony and thus inadmissible as evidence of the extent of a plaintiff's injuries suffered in the collision.  DiCosola, 342 Ill. App. 3d at 534-38; Baraniak v. Kurby, 371 Ill. App. 3d 310, 317-18 (2007).

Although plaintiffs at bar sought to introduce photographs of the damaged vehicles as evidence of the ambulance's speed prior to the crash, and not as evidence of their injuries, we find DiCosola and Baraniak instructive since no expert testimony was presented in this case to support the photographs.  As such, we find no error with the circuit court's decision not to rely upon the photographs when it ruled on defendants' summary judgment motion.

We next turn to the testimonial evidence.  In doing so, we acknowledge that Gonzales admitted he did not stop the ambulance

at the stop sign at Oakton and Sherman. However, section 11-205 of the Illinois Vehicle Code provides that a driver of an emergency vehicle may proceed past a stop sign or red light after slowing (625 ILCS 5/11-205 (West 2006)).

That said, plaintiffs contend that Gonzales did not slow the ambulance as he drove through the intersection. The basis of plaintiffs' contention is their testimony that the ambulance was traveling 50 to 60 miles per hour. In addition, plaintiffs rely on Kuller's and Lawrence's testimony regarding sounds they heard.

As plaintiffs assert, our supreme court has found that laymen may express an opinion as to a vehicle's speed. Watkins v. Schmitt, 172 Ill. 2d 193, 207 (1996). Unlike Watkins and the other cases upon which plaintiffs' rely, such as Young and Carter, however, plaintiffs, Lawrence, and Kuller did not testify that they saw the ambulance prior to the collision. Plaintiffs simply opined that the ambulance was traveling at a rate of speed of 50 to 60 miles per hour based on the impact they felt and the distance their vehicle traveled upon their collision with the ambulance. Further, neither Kuller nor Lawrence saw the collision but only heard it.

As such, we are left with Gonzales' testimony regarding the ambulance's rate of speed prior to the collision. He testified that he slowed the ambulance to 15 to 20 miles per hour as he entered the intersection and to 5 miles per hour immediately before the collision.

1-06-3392

Next, plaintiffs argue that conflicting evidence existed as to whether Gonzales activated the emergency lights and siren of the ambulance. We do not agree.

In response to Gonzales' testimony that he activated the emergency equipment, and Kuller's and Lawrence's testimony that they heard a siren, plaintiffs merely testified that they did not recall hearing the sirens prior to the accident. Their simple failure to recollect hearing the sirens does not directly contradict the testimony of the other witnesses.

Even if the testimony on this point was contradictory, this court has held that the failure to activate emergency equipment does not constitute willful and wanton conduct. Shuttlesworth v. City of Chicago, No. 1-06-3433, slip op. at 11 (November 5, 2007). Plaintiffs misconstrue the holdings in Young and Carter to conclude otherwise. Unlike the case at bar, as asserted above, the holdings in those cases relied heavily on eyewitness testimony that the defendant drivers were driving their vehicles at high rates of speed at the time of the collisions.

Finally, plaintiffs argue that Gonzales' failure to stop the ambulance at the stop sign was evidence of willful and wanton conduct since he knew his view of westbound traffic would be partially obstructed as he entered the intersection. For support, plaintiffs rely upon the Evanston fire department policy that required an emergency driver to slow down or stop at traffic signs during an emergency situation.

1-06-3392

First, this court has stated that the "[v]iolation of self-imposed rules or internal guidelines *** 'does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct.' " Wade v. City of Chicago, 364 Ill. App. 3d 773, 781 (2006), quoting Morton v. City of Chicago, 286 Ill. App. 3d 444, 454 (1997). Thus, a violation of the Evanston fire department policy would not constitute evidence of willful and wanton conduct.

Second, as stated above, the record does not support plaintiffs' contention that Gonzales was driving at a high rate of speed as he drove through the intersection. As such, even if Gonzales did not have a clear view of the intersection, his alleged failure to stop prior to entering the intersection, despite an obstructed view, would have been at most negligent conduct. We cannot conclude that Gonzales' conduct demonstrated an utter indifference to or conscious disregard for others' safety. Pfister, 167 Ill. 2d at 421.

Accordingly, even viewing the evidence in a light most favorable to plaintiffs, we conclude there was no genuine issue of material fact regarding whether Gonzales' actions constituted willful and wanton conduct.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

1-06-3392

THEIS and CUNNINGHAM, JJ., concur.