SECOND DIVISION
March 25, 2008

No. 1-06-3601

| | | |
|---|---|---|
| LISA L. COLLINS, as Special Representative of the Estate of Stanley Collins, | ) ) ) | |
| Plaintiff and Counterdefendant-Appellant, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County. |
| ST. PAUL MERCURY INSURANCE COMPANY, and CUMMINS-ALLISON CORPORATION, | ) ) ) | |
| Defendants and Counterplaintiffs-Appellees | ) ) ) | |
| (St. Paul Mercury Insurance Company, | ) ) | Honorable |
| Third-Party Plaintiff; | ) ) | James F. Henry, Judge Presiding. |
| Michael Fluherty, | ) ) | |
| Third-Party Defendant). | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County granting defendants'

motion for summary judgment, finding there was no ambiguity in the terms of the insurance

policy and the underinsured motorist (UIM) endorsement for decedent's company vehicle

covered him only when he was in the assigned vehicle in Mississippi. Plaintiff, Lisa Collins,

instituted this declaratory judgment action against defendants, St. Paul Mercury Insurance

Company (St. Paul) and Cummins-Allison Corporation (Cummins), seeking a declaration that

the Mississippi UIM endorsement on decedent's company vehicle applied in the event of his

death from an accident in another company vehicle in Illinois and that, consequently, its stacking provision entitled her to stack the policy limits for all of the insured Cummins' vehicles.

FACTS

The decedent, Stan Collins, and his wife, plaintiff, were residents of Mississippi in 2004 and decedent was employed by Cummins as a technician. As part of his compensation, he was furnished with a company vehicle, a 2003 Pontiac Aztec (Aztec), for which he made monthly payments to Cummins. He kept the vehicle garaged at his home in Mississippi.

St. Paul issued general commercial liability policy No. CK01205207 to Cummins, which included fleet auto coverage for all of the vehicles owned by Cummins, including the Aztec. The St. Paul policy also provided UIM and uninsured motorist (UM) coverage for the decedent's Aztec and all of the other Cummins vehicles, including those that were in Illinois. The UIM coverage for the vehicles in each state was provided in a separate endorsement and included coverage that was specific to each state.

On December 11, 2004, while he was in Illinois for work-related training at a Cummins facility, the decedent was involved in a fatal automobile accident with an underinsured vehicle. At the time, he was a passenger in a Cummins vehicle, a 2001 Dodge Caravan, which was being driven by a Cummins employee, Michael Fluherty, during travel related to the training session. The Caravan was a Cummins fleet vehicle and was insured under the same St. Paul policy as the Aztec. The Caravan, which was garaged in Illinois, was covered by an Illinois UIM endorsement to the St. Paul policy.

The vehicle in which the decedent was a passenger was struck by a car being driven by

2

1-06-3601

Melvin Kennedy, who was also killed.. The other vehicle belonged to Laura Wells and was insured by a State Farm Insurance Company (State Farm) auto policy which provided coverage only for $25,000 per person and $50,000 per accident. Pursuant to the St. Paul policy, which provided UIM coverage of $1,000,000, Wells' vehicle was an underinsured vehicle as the policy defined that term.

The introduction to the UIM endorsement for vehicles garaged in Mississippi, including the decedent's Aztec, states as follows, in pertinent part:

"UNINSURED AND UNDERINSURED MOTORISTS PROTECTION

MISSISSIPPI-STACKED

We've designed this agreement to cover damages for bodily injury and property damage caused by an accident which the named insured or anyone else covered under this agreement are legally entitled to collect from the driver or owner of an uninsured or underinsured vehicle.

This agreement provides coverage for covered autos registered or mainly garaged in Mississippi."

This endorsement further provides that the applicable UIM coverage limit is calculated by adding together the limits of all of the policies which have been issued to Cummins. The policy contains the following language with respect to the stacking process:

"If there is more than one covered auto, our maximum limit for any one accident is the total, added together, of the limits that apply to

3

autos the named insured owns which are covered autos."

The Mississippi UIM endorsement defines covered autos as follows:

> "The Coverage Summary, shows which autos are covered under
> this agreement.
>
> **Scheduled autos.** If this is shown in the Coverage Summary, the
> autos listed in the schedule are the covered autos at the time the
> agreement goes into effect."

Both the decedent's Aztec and Fluherty's Caravan were listed in the coverage summary as covered autos. However, the Illinois UIM endorsement does not contain a stacking provision.

St. Paul's fleet policy used the term "protected person" to identify those persons who are entitled to coverage under that policy. The Mississippi UIM endorsement used the following language to provide that any person who is in a covered auto is a protected person:

> "If the named insured is shown in the Introduction as *** any other
> form of organization, then the following are protected persons:
>
> • Anyone in a covered auto or temporary substitute for a
>   covered auto; and
>
> • Anyone for damages he or she is entitled to recover because
>   of bodily injury to another protected person."

With respect to vehicles that are covered in Illinois, the St. Paul policy provides the following types of coverage: liability, underinsured motorists, and medical payments. It also indicates that UM property damage applies.

The declarations page of the St. Paul policy reflects that the limits for UIM coverage are $1 million per accident for "any owned auto" in several states, including Mississippi. The policy also states that each state's separate UIM endorsement provides coverage for covered autos which are registered or principally garaged in that state.

Plaintiff and Fluherty, contending that Wells' vehicle was underinsured, made claims for UIM benefits under the St. Paul policy. In addition, plaintiff filed a complaint for declaratory judgment, seeking a declaration that the Mississippi UIM endorsement applies to her husband's death and that its stacking provision entitles her to stack the policy limits for all insured Cummins' vehicles (approximately 268 across the country). She argued that because the Mississippi UIM endorsement did not distinguish between the Aztec, which was given to her family in Mississippi, or any other vehicles owned by Cummins that decedent would possibly use, the Mississippi endorsement should apply to the accident which occurred in Illinois. Plaintiff also argued that decedent was a covered person under the Illinois UIM endorsement.

St. Paul filed a counterclaim against plaintiff and Fluherty, seeking a declaration that the UIM claims relating to the underlying accident were governed by the Illinois UIM endorsement because the accident vehicle was registered in Illinois. There is a maximum of $1 million in UIM benefits available under the Illinois UIM endorsement, and there is no stacking provision.

Both plaintiff and St. Paul filed cross-motions for summary judgment. Additionally, St. Paul filed a motion to strike plaintiff's affidavit, which contained plaintiff's statements regarding the Aztec that decedent used as a company car in Mississippi.

The circuit court subsequently entered a written order granting St. Paul's motion for

summary judgment, concluding that the terms in the St. Paul policy were unambiguous and that the Illinois UIM endorsement governed the UIM claims arising out of the underlying accident. In so finding, the court found that St. Paul's interpretation of the policy language was logical in that the Mississippi UIM endorsement did not apply to an accident in Illinois involving a covered auto which is registered and principally garaged in Illinois because that endorsement states that coverage is provided for "autos registered or mainly garaged in Mississippi." The circuit court further found that plaintiff's affidavit was irrelevant to the determination of which state's UIM endorsement applies.

ANALYSIS

In an appeal from the grant of summary judgment, we conduct a *de novo* review. <u>Pekin Insurance Co. v. Estate of Robin Goben</u>, 303 Ill. App. 3d 639, 642 (1999). Although it is recognized that summary judgment is a drastic means of disposing of litigation, it is appropriate in cases where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. <u>Pekin Insurance</u>, 303 Ill. App. 3d at 642. In reviewing a grant of summary judgment, this court considers anew the facts and the applicable law and determines whether the circuit court was correct in its ruling. <u>Frigo v. Motors Insurance Corp.</u>, 271 Ill. App. 3d 50, 57 (1995).

The construction of an insurance policy is a question of law and can be appropriately disposed of by summary judgment. <u>Pekin Insurance</u>, 303 Ill. App. 3d at 642. When construing the language of an insurance policy, the court's primary objective is to determine and effectuate the partes' intentions as expressed in their written agreement. <u>Pekin Insurance</u>, 303 Ill. App. 3d

at 642. If the terms in the policy are "clear and unambiguous," they must be given their plain and ordinary meaning. Pekin Insurance, 303 Ill. App. 3d at 642. If the terms are ambiguous, meaning that they are susceptible to more than one meaning, they will be construed strictly against the insurer. Pekin Insurance, 303 Ill. App. 3d at 642. The court will interpret the policy as a whole, considering the type of insurance purchased, the nature of the risks involved, and the purpose of the contract. Pekin Insurance, 303 Ill. App. 3d at 642-43. Limiting provisions are interpreted liberally in favor of the insured and against the insurer. Pekin Insurance, 303 Ill. App. 3d at 642.

In determining whether an ambiguity exists, the provisions in an insurance policy should be read together and not separately. Johnson v. Davis, 377 Ill. App. 3d 602, 607 (2007). The inquiry is whether the provision is subject to more than one reasonable interpretation, not whether other possibilities can be suggested. Johnson, 377 Ill. App. 3d at 607.

Turning to the case at bar, we find that the terms of the St. Paul policy are unambiguous. The policy clearly contains separate UIM endorsements for each state in which Cummins has vehicles registered. In turn, each state's UIM endorsement clearly states that it applies to vehicles which are registered and garaged within that state. Neither party disputes that the Aztec, which was covered under the Mississippi UIM endorsement, was registered and garaged in Mississippi. Nor do the parties dispute that the Caravan, which was covered under the Illinois UIM endorsement, was registered and garaged in Illinois. There is also no dispute that the accident occurred in Illinois in the Caravan in which the decedent was a passenger. Consequently, the Illinois UIM endorsement would apply for a calculation of the UIM benefits

due plaintiff since no vehicle registered or principally garaged in Mississippi was involved in the accident. Accordingly the Mississippi UIM endorsement is not triggered. See, *e.g.,* <u>Berg v. Liberty Mutual Insurance Co.</u>, 319 F. Supp. 2d 933, 938 (N.D. Iowa 2004).

Next, plaintiff contends the trial court erred in striking her affidavit on relevancy grounds. She maintains that her affidavit was relevant because it shed light on the Collins' expectations.

The use of affidavits in summary judgment proceedings is subject to Supreme Court Rule 191. 145 Ill. 2d R. 191(a). Unsupported assertions, opinions, and conclusions do not comply with the rule and may be stricken. <u>Lewis v. Rutland Township</u>, 359 Ill. App. 3d 1076, 1079 (2005). When a trial court rules on a motion to strike an affidavit in conjunction with a motion for summary judgment, the appellate court reviews that ruling *de novo*. <u>Jackson v. Graham</u>, 323 Ill. App. 3d 766. 773 (2001).

We find that plaintiff's affidavit was properly stricken because it failed to comply with the requirements of Rule 191 in that it contained unsupported assertions, opinions, and conclusions regarding plaintiff's "expectations" about the St. Paul policy's coverage.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., and HALL, J., concur.