CHARLENE McLEAR *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF BARRINGTON, Defendant-Appellee.

First District (2nd Division)    No. 1—08—0692

Opinion filed June 9, 2009.

Mary M.L. Spiegel, of Hawthorn Woods, for appellants.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiffs Charlene McLear (McLear), James Feit (Feit) and Christian Toussaint (Toussaint) appeal from the circuit court of Cook County's February 14, 2008, order, granting summary judgment to defendant Village of Barrington (the Village) and holding that: (1) the plaintiffs were not "firefighters" within the meaning of Article 4 of the Illinois Pension Code (40 ILCS 5/4—106(b) (West 2006)) and, thus, (2) were ineligible to transfer their pension funds and service credits accumulated prior to 1995 from the Illinois Municipal Retirement Fund Pension Plan (IMRF) (40 ILCS 5/7—101 *et seq.* (West 2006)) to the Firefighters' Pension Fund (40 ILCS 5/4—101 *et seq.* (West 2006)),

pursuant to section 4—108.4(b) (40 ILCS 5/4—108.4(b) (West 2006)) and section 7—139.10 (40 ILCS 5/7—139.10 (West 2006)). On appeal, the plaintiffs argue that they were firefighters within the meaning of the pension statutes because their employment duties prior to 1995 involved firefighting activities and that they were entitled to a transfer of their pension funds from IMRF to the firefighters' pension fund. For the following reasons, we affirm.

## BACKGROUND

In 1957, the Village adopted an ordinance that "hereby created and established a fire department." The ordinance, however, explicitly stated that all members of the fire department must be part-time.[1] There is no evidence that any personnel were appointed as a firefighter by the board of fire and police commissioners before 1995. Prior to 1995, pursuant to a contractual agreement, fire protection services were provided to the Village by Barrington Fire Department, Inc. (Barrington, Inc.), described as a "paid-on-call," nonprofit organization. The contractual agreement entered into between the Village and Barrington, Inc., specified that Barrington, Inc., was responsible for providing paid-on-call fire personnel to the Village, and that the Village would provide all fire equipment and training for the Barrington, Inc., personnel.

On October 23, 1975, Feit was first employed by the Village as a full-time "mobile intensive care specialist," the duties of which were paramedic in nature and included some firefighting activities. The job description for a mobile intensive care specialist stated that the primary responsibility of this position was for the "protection of life through operation of [m]obile [i]ntensive [c]are [v]ehicle and equipment" and "require[d] performance in combating and extinguishing fires, and maintenance of fire equipment." A mobile intensive care specialist was also required to "maintain certification as an [e]mergency [m]edical [t]echnician II, [and] as a member of the Barrington Fire Department participation and training for special fire-fighting duties under emergency conditions which frequently involve considerable hazard and personal danger." Further, the job description noted that examples of work included responding to alarms, entering burning buildings with hose lines, operating nozzles and spraying water on the fires as directed by superiors. In Feit's deposition, he testified that while on duty, he responded to all types of emergency calls, including

---

[1]The record indicates two separate versions of the Village ordinance, and it is unclear when the ordinance was revised or the effective date of the revision. Both versions, however, stated that all members of the fire department must serve part-time.

fire emergencies. He testified that he responded to these emergency calls in an ambulance, and on occasion, in a fire engine. He was also aware that at some point during his tenure before 1995, the job description for a mobile intensive care specialist changed to exclude any fire suppression duties, although he claimed that he continued to perform firefighting activities while on duty for the Village and was never disciplined for doing so or told by superiors to cease fire suppression activities. In addition to being a full-time Village employee, Feit was also a member of Barrington, Inc., for which he performed firefighting duties while on duty with the Village.

On January 31, 1980, McLear was hired by the Village as a full-time emergency medical technician II (EMT II) in its emergency services department. In her deposition, McLear testified that she performed firefighting activities while on duty with the Village. Although she was aware that a change in her job description in 1985 eliminated fire suppression duties, she testified that she continued to perform such tasks when responding to emergency calls. Similar to Feit, McLear was never told by her superiors that she should cease fire suppression activities. Like Feit, McLear was a member of Barrington, Inc., at all relevant times during her employment as an EMT II.

On February 7, 1980, Toussaint was also hired by the Village as an EMT II for its emergency services department. Toussaint's job duties also included fire suppression; however, he was aware that his job description changed sometime between 1980 and 1990, which deleted any reference to fire suppression in the description. Unlike Feit and McLear, Toussaint was never a member of Barrington, Inc.

At the time of their initial hires, the three plaintiffs were under the supervision of Harold Martens, chief of emergency operations at the Village. Up until 1995, the Village did not have a firefighters' pension fund, pursuant to Article 4 of the Illinois Pension Code (40 ILCS 5/4—101 et seq. (West 2006)), and all three plaintiffs could only make contributions to the IMRF.

On September 24, 1984, the Village passed ordinance number 1932 (ordinance 1932), the purpose of which was for the Village to elect to participate in the Illinois Fire Protection Training Program. Village of Barrington, Ill., Ordinance No. 1932 (eff. Sept. 24, 1984). Ordinance 1932 stated that "before an individual may [commence] regular employment as a firefighter, either as a volunteer or as a full-time firefighter, he must have successfully completed an approved training course as provided in the [Illinois Fire Protection] Act and must be certified by the Illinois State Fire Marshal as a Firefighter II." Village of Barrington, Ill., Ordinance No. 1932 (eff. Sept. 24,

1984). During McLear's deposition testimony, she stated that participants in the Illinois Fire Protection Training Program did not have to be full-time members of a regular municipal fire department. Prior to 1995, as part of their employment with the Village, the plaintiffs were required to obtain various state firefighter certifications and were required to attend firefighter training and classes. By April 2, 1983, before ordinance 1932 was enacted, the plaintiffs had each completed Firefighter II certification.

The record shows that the Village's annual employee evaluations prior to 1995 included goals and objectives for the plaintiffs, such as the following: "during the next 6 [months] [Feit] will be responsible for establishing a full fire inspection program," "during the next 6 [months] [McLear] will actively be working in fire prevention as the [d]epartment initiates a full fire inspection program," "during the next 6 [months] [Toussaint] will actively be working in fire prevention as the [d]epartment initiates a full fire inspection program," "continue to provide data and information to the department as well as participation in department maintenance and fire pre-plan activities," and "complete [firefighter] III certification."

In 1985, the plaintiffs, along with other full-time paramedic personnel, requested to have their positions classified under the Fire and Police Commission and the Article 4 Illinois Firefighters' Pension Fund. On July 11, 1985, in a letter from then Fire Chief Steve Figved (Chief Figved) to "all full-time personnel," the Village specifically stated:

> "Following discussion on your request, the Village Board members voted to have your [e]mployee [c]lass [s]pecification remain as [EMT II paramedic]. As employees of the Village you are to follow the policies and procedures as outlined in the Village [p]ersonnel [p]olicy [m]anual. This would include a pension program as covered by the [IMRF]."

On December 21, 1992, an interoffice memorandum from Chief Figved to "all full-time personnel" noted the following:

> "I have been asked to clarify the duties of our full-time staff. The primary function of the paramedics is to provide emergency medical services. This means that you should not participate in active fire suppression and control. These activities include apparatus response, pumping, fire attack, or overhaul."

Further, a January 25, 1993, letter from Chief Figved to then acting village manager Denise Pieroni (Manager Pieroni) regarding full-time paramedic training, stated the following:

> "Enclosed please find a listing of the twenty-three subject areas covered by the Office of the State Fire Marshal for certification as

a Firefighter I, II or III. I have highlighted fourteen of the areas that would be involved in *cross-training the paramedic staff* in an effort to provide rescue, arson investigation, hazardous material, and fire prevention/inspection responsibilities to the [d]epartment. *Please note that obvious areas such as [f]ire hose and [n]ozzles, [w]ater supply, [v]entilation, [o]verhaul, and [s]alvage are typically firefighting tasks that do not deal with the paramedics' current responsibilities and therefore are not highlighted.*" (Emphasis added.)

In 1995, all three plaintiffs were appointed by the board of fire and police commissioners as firefighters, and for the first time, the Village established an Article 4 firefighter's pension fund. The Village did not consider itself to have had a full-time fire department until 1995. The plaintiffs were required to undergo physical agility, polygraph, and psychological exams as part of the process to obtain appointment by the board of fire and police commissioners. During Toussaint's deposition testimony, he stated that these exams were prerequisites for anyone who wished to join the Village fire department. Once the plaintiffs were appointed as firefighters by the board of fire and police commissioners in 1995, the Village ceased making contributions to the plaintiffs' pension funds in IMRF and began making contributions to the plaintiffs' firefighters' pension funds. In 1995, none of the plaintiffs were eligible to qualify for retirement benefits under either the IMRF or firefighters' pension fund. As a result, the service credits and funds already contributed by the plaintiffs until 1995 remained in the IMRF, while new contributions for them began to accumulate in the firefighters' pension fund.

On June 29, 2005, the plaintiffs filed a two-count complaint in the circuit court of Cook County, requesting that the circuit court classify the plaintiffs as firefighters under Article 4 of the Illinois Pension Code (40 ILCS 5/4—106(b) (West 2006)), and to require the Village to transfer the plaintiffs' creditable service and pension contributions made prior to 1995 from the IMRF to the firefighters' pension fund.

On December 16, 2005, the plaintiffs filed an amended complaint, which remained largely unchanged from the original complaint, with the exception of a few additional factual details. Count I of the amended complaint sought a declaration that prior to the plaintiffs' classification as firefighters in 1995, "the plaintiffs were and always have been firefighters employed by the [Village] since their date of hire for all purposes, including for the purpose of participation in the [firefighters' pension fund] as defined by 40 ILCS 5/4—101 *et seq.* (West 2005) [*sic*]." In count II of the amended complaint, the plaintiffs sought a *writ of mandamus* requesting that the trial court order the

Village to transfer all of the plaintiffs' creditable years of service and pension contributions made by the Village and the plaintiffs from the IMRF to the firefighters' pension fund, pursuant to 2004 amendments made to Articles 4 and 7 allowing for such transfers (40 ILCS 5/4—108.4, 7—139.10 (West 2006)).

On October 17, 2007, the Village filed its motion for summary judgment, alleging that the plaintiffs were only paramedics until 1995, when they were appointed by the board of fire and police commissioners and sworn in as full-time firefighters. In its motion the Village alleged that it did not have a full-time fire department until 1995 and had relied on Barrington, Inc., prior to 1995 to provide the Village with needed fire protection services. Further, the Village alleged that any training and certifications the plaintiffs received from the Office of the State Fire Marshal were courses offered either for potential service in a fire department, or as part-time or volunteer firefighters, and that the individuals receiving such certifications did not need to be full-time active firefighters, nor were such courses a process by which individuals were appointed to a municipal fire department in the manner required by law.

On February 14, 2008, the trial court granted summary judgment in favor of the Village, holding that the plaintiffs were not "firefighters" within the meaning of Article 4 of the Illinois Pension Code (40 ILCS 5/4—106(b) (West 2006)) and, thus, were ineligible to transfer their pension funds and service credits accumulated prior to 1995 from the IMRF (40 ILCS 5/7—101 *et seq.* (West 2006)) to the firefighters' pension fund (40 ILCS 5/4—101 *et seq.* (West 2006)), pursuant to section 4—108.4(b) (40 ILCS 5/4—108.4(b) (West 2006)) and section 7—139.10 (40 ILCS 5/7—139.10 (West Supp. 2007)).

On March 12, 2008, the plaintiffs filed the instant appeal before this court.

## ANALYSIS

Resolution of the issues in this case depends upon the interpretation of Articles 4 and 7 of the Illinois Pension Code. 40 ILCS 5/4—101 *et seq.*, 7—101 *et seq.* (West 2006). The main issue before this court is whether the plaintiffs were "firefighters" for the purpose of transferring their pension funds and service credits accumulated in the IMRF prior to 1995 to the firefighters' pension fund, pursuant to section 4—108.4(b) (40 ILCS 5/4—108.4(b) (West 2006)) and section 7—139.10 (40 ILCS 5/7—139.10 (West 2006)).

We review *de novo* the trial court's grant of summary judgment in favor of the Village. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45, 886 N.E.2d 1035, 1039 (2008). Summary judgment is

appropriate when pleadings, affidavits, depositions and admissions of record, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Katalinic v. Board of Trustees of Municipal Employees', Officers', & Officials' Annuity & Benefit Fund*, 386 Ill. App. 3d 922, 926, 898 N.E.2d 243, 246 (2008); *Collins*, 381 Ill. App. 3d at 45, 886 N.E.2d at 1039. We also address *de novo* the statutory construction of various provisions within the Illinois Pension Code (40 ILCS 5/4—101 *et seq.*, 7—101 *et seq.* (West 2006); see also 65 ILCS 5/10—2.1—1 *et seq.* (West 2006)). *Katalinic*, 386 Ill. App. 3d at 926, 898 N.E.2d at 246 ("[i]nterpretation of a statute is a question of law requiring *de novo* review"); *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 210, 889 N.E.2d 1167, 1168 (2008) ("[a]n appeal involving undisputed facts and the interpretation of statutory provisions presents a question of law we address *de novo*").

The plaintiffs argue that amendments under Articles 4 (40 ILCS 5/4—108.4(b) (West 2006)) and 7 (40 ILCS 5/7—139.10 (West 2006)) made in 2004 require that the Village transfer the plaintiffs' pension funds and service credits accumulated prior to 1995 from the IMRF to the firefighters' pension fund. Specifically, the plaintiffs argue that they should be classified as firefighters for purposes of transferring pension funds because they participated in firefighting activities, in addition to paramedic duties, while responding to emergency calls for the Village. They further allege that the Village's past behavior confirmed that the plaintiffs were indeed firefighters—for example, the Village allegedly took advantage of Federal Labor and Standards Act (FLSA) (29 C.F.R. §553.230 (1994)) exemptions for the plaintiffs' work prior to 1995 and considered itself a public agency with an "organized fire department"; prior to 1995, the Village required that the plaintiffs be trained for firefighting certification programs through the Office of the State Fire Marshal; the Village allegedly held out the plaintiffs to the public as firefighters; and two of the plaintiffs allegedly received workmen's compensation benefits from the Village for injuries sustained while performing firefighting activities. Moreover, the plaintiffs contend that the Village's own ordinance shows that a fire department for the Village was established before 1995 and that the plaintiffs were hired as full-time employees designated as "paramedics/firefighters."

The Village argues, however, that the plaintiffs were not firefighters until appointed by the board of fire and police commissioners in 1995 and that, up until that time, the plaintiffs were only paramedics employed by the Village and properly included in the IMRF. Specifi-

cally, the Village contends that fire suppression activities by the plaintiffs did not make them firefighters within the meaning of the statute. Further, the Village argues that the Village had neither a fire department nor a firefighters' pension fund prior to 1995, and that the plaintiffs' only full-time employment for the Village during the period was as paramedics and not firefighters. Therefore the plaintiffs are not entitled to a transfer of their pension funds for the period prior to 1995.

In statutory construction, a court should "ascertain and give effect to the legislature's intent." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 394, 789 N.E.2d 1211, 1212 (2003). The legislature's intent may be discerned by the plain and ordinary meaning of the statutory language, and "[w]here the language is clear and unambiguous, [a court] must apply the statute without resort to further aids of statutory construction." *Krohe*, 204 Ill. 2d at 395, 789 N.E.2d at 1212. "Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences resulting from different constructions." *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 494, 791 N.E.2d 516, 519 (2003). Further, a statute "must be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous." *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524, 778 N.E.2d 683, 392 (2002). Pension statutes must also be liberally construed in favor of the petitioner's rights. *Shields*, 204 Ill. 2d at 494, 791 N.E.2d at 519.

The amendments to Article 4's firefighters' pension fund in 2004 permit the transfer of creditable service from the IMRF under Article 7, as follows:

> "(b) A *firefighter* who was *excluded from participation* in an Article 4 fund because the firefighter earned credit for that service under Article 7 of this [c]ode and who is a participant in the [IMRF] may also elect to establish *creditable service* for those periods of employment as a firefighter during which he or she was excluded from participation in an Article 4 fund by paying into the fund the amount that the person would have contributed had deductions from salary been made for this purpose at the time the service was rendered, together with interest thereon at 6% per annum, compounded annually, from the time the service was rendered until the date of payment, less any amounts transferred from the [IMRF] under [s]ection 7—139.10." (Emphasis added.) 40 ILCS 5/4—108.4(b) (West 2006).

Section 7—139.10 outlines the steps required for the transfer of pension funds from Article 7's IMRF to the firefighters' pension fund under Article 4:

"A person who has elected under [s]ection 4—108.4 to become an active participant in a firefighter pension fund established under Article 4 of this [c]ode may apply for transfer to that Article 4 fund of his or her creditable service accumulated under this Article for *municipal firefighter service*. At the time of the transfer, the [IMRF] shall pay to the firefighter[s'] pension fund an amount equal to:

    (1) the amounts accumulated to the credit of the applicant for *municipal firefighter service*, including interest;

    (2) any interest paid by the applicant in order to reinstate that service; and

    (3) the municipality credits based on that service, including interest.

Participation in this [IMRF] fund with respect to the transferred credits shall terminate on the date of transfer.

For purpose of this [s]ection, '*municipal firefighter service*' means service with the fire department of a participating municipality for which the applicant established creditable service under this Article." (Emphasis added.) 40 ILCS 5/7—139.10 (West 2006).

The applicability of the two above provisions depends on whether the plaintiffs were firefighters for the purpose of transferring their pension funds within the meaning of these statutes.

Article 4 of the Illinois Pension Code was created in order to provide pension benefits for firefighters and their surviving spouses and children. 40 ILCS 5/4—101 *et seq.* (West 2006). Section 4—106 of the firefighters' pension fund defines "firefighter" as follows:

"(b) In municipalities which are subject to [d]ivision 2.1 of Article 10 of the Illinois Municipal Code, any person employed by a city in its fire service as a firefighter, fire engineer, marine engineer, fire pilot, bomb technician, or scuba diver; and, in any of these positions whose duties also include those of a firefighter and are *certified* in the same manner as a firefighter in that city." (Emphasis added.) 40 ILCS 5/4—106(b) (West 2006).

It is undisputed that the Village is a division 2.1 municipality consisting of a population of at least 5,000 and under 250,000, and subject to Article 10 of the Illinois Municipal Code (65 ILCS 5/10—1—1 *et seq.* (West 2006)). Section 10—2.1—4 provides the board of fire and police commissioners with the authority to appoint all members of the police and fire departments, stating:

"The sole authority to issue *certificates* of appointment shall be vested in the Board of Fire and Police Commissioners and all certificates of appointments issued to any officer or member of the fire or police department of a municipality shall be signed by the chairman and secretary respectively of the [B]oard of [F]ire and [P]olice [C]ommissioners ***." (Emphasis added.) 65 ILCS 5/10—2.1—4 (West 2006).

The plain language of section 10—2.1—4 of the Illinois Municipal Code provides that the sole authority to issue certificates of appointment must rest in the board of fire and police commissioners. Here, the plaintiffs were not appointed by the board of fire and police commissioners as firefighters until 1995, when they also underwent physical agility, polygraph, and psychological exams as part of the process of being appointed. See 65 ILCS 5/10—2.1—6(h) (West 2006). It was only at that time that the Village first established an Article 4 firefighters' pension fund. Once the plaintiffs were appointed as firefighters, the Village ceased making contributions to the plaintiffs' pension funds in IMRF, and instead began making contributions to the plaintiffs' firefighters' pension funds.

The plaintiffs argue that despite the legislature's full knowledge of the requirement established by section 10—2.1—4 that the board of fire and police commissioners had sole authority to appoint firefighters to the fire department, the legislature enacted the amendments of sections 4—108.4 and 7—139.10 in order to provide a vehicle to transfer pension credits from the IMRF to the firefighters' pension fund. The plaintiffs maintain that the amendments in Articles 4 and 7 are controlling over the language of the Illinois Municipal Code under Article 10. We disagree. We cannot only examine the language and meaning of "firefighters" as it relates to the transfer of pension funds in Articles 4 and 7, to the exclusion of all other relevant statutory provisions enacted by the legislature. In enacting the 2004 amendments to the firefighters' pension fund statute and the IMRF statute, it is presumed that the legislature "acts rationally and with full knowledge of all prior legislation." *People v. Jones*, 214 Ill. 2d 187, 199, 824 N.E.2d 239, 246 (2005); see also *Spina v. Toyota Motor Credit Corp.*, 301 Ill. App. 3d 364, 376, 703 N.E.2d 484, 492 (1998). Thus, we must look at all relevant statutes and construe them as a whole.

As discussed above, section 4—106 of the firefighters' pension fund statute defines firefighters as a "firefighter, fire engineer, marine engineer, fire pilot, bomb technician, or scuba diver; *and, in any of these positions whose duties also include those of a firefighter and are certified in the same manner as a firefighter in that city*." (Emphasis added.) 40 ILCS 5/4—106(b) (West 2006). Based on the plain language of the statute, it is clear that the legislature intended only for those employed in the listed positions, who also perform firefighting duties and are certified in the same manner as a firefighter, to be considered "firefighters" within the meaning of the Article 4 firefighters' pension fund statute. Feit was hired in 1975 as a mobile intensive care specialist, while McLear and Toussaint were hired in 1980 in the positions of EMT II. Nowhere in the plain language of section 4—106(b) does it

specifically list mobile intensive care specialist, EMT II or paramedic positions in general as part of its definition of a firefighter. But *cf. Board of Trustees of the Firemen's Pension Fund v. Department of Insurance*, 109 Ill. App. 3d 919, 922, 441 N.E.2d 107, 108 (1982) (paramedics can be considered "firemen" under section 4—106 when they are already appointed as firefighters) (hereafter *City of Park Ridge*). Moreover, we do not find that the plaintiffs were "certified in the same manner as a firefighter" in the Village prior to 1995. As discussed above, the plaintiffs were not issued their certificates of appointment by the board of fire and police commissioners until 1995, as mandated by section 10—2.1—4 in order to become members of the fire department, and until after passing various physical and psychological exams, which Toussaint testified were prerequisites for anyone who wished to join the Village fire department. Therefore, we find that the plaintiffs were not firefighters within the meaning of Article 4.

The plaintiffs, however, argue that regardless of their job titles, they performed firefighting duties while responding to emergency calls and that their original job descriptions included fire suppression duties and, thus, they were both paramedics and firefighters within the meaning of the statutes and are entitled to the transfer of their pension funds under sections 4—108.4 and 7—139.10. In support of this contention, the plaintiffs cite *City of Park Ridge*, 109 Ill. App. 3d 919, 441 N.E.2d 107. We disagree.

In *City of Park Ridge*, this court held that appointed firefighters, who were also certified as paramedics and received bonuses for working as paramedics, were required to contribute the bonus pay to the firefighters' pension fund because the bonus pay constituted the firefighters' salary. We find the facts of the instant case distinguishable from *City of Park Ridge*, in light of the fact that the plaintiffs were not firefighters until they were appointed by the board of fire and police commissioners in 1995 and, thus, could not claim to be firefighters for their services as paramedics prior to their appointment.

We also note that had the legislature intended to consider individuals who served as mobile intensive care specialists, EMT II or paramedic positions as "firefighters," it certainly could have explicitly stated that. For example, section 4—108 of the firefighters' pension fund statute enumerates specific types of services performed by individuals that would qualify as "creditable service" served as a firefighter, including "[t]ime served *** in the position of protective inspection officer or administrative assistant for fire services, *** *if the position included firefighting duties, notwithstanding that the person may not have held an appointment as a firefighter.*" (Emphasis added.) 40 ILCS 5/4—108(c)(5) (West 2006). Had the legislature

intended for paramedics—who also performed firefighting duties, but yet who were not appointed by the board of fire and police commissioners—to be firefighters under Article 4, it could and should have indicated that. Therefore, we find that despite performing firefighting duties during the course of their tenure as paramedics before 1995, the plaintiffs were not "firefighters" within the meaning of Article 4.

In further support that the plaintiffs may not transfer creditable service and pension funds from the IMRF to the firefighters' pension fund for the period of time prior to their appointment by the board of fire and police commissioners, we note that the plain language of section 4—108.4(b) provides that "[a] *firefighter* who was *excluded* from participation in an Article 4 fund because the *firefighter* earned credit for that service under Article 7 of this Code and who is a participant in the [IMRF] may also elect to establish *creditable service* for those periods of employment as a *firefighter* during which he or she was excluded from participation in an Article 4 fund." (Emphasis added.) 40 ILCS 5/4—108.4(b) (West 2006). Article 4 defines "creditable service" as "the time served as a *firefighter* of a municipality." (Emphasis added.) 40 ILCS 5/4—108(a) (West 2006). Under section 4—108.4, such creditable service and pension funds must be transferred pursuant to section 7—139.10 under Article 7, which states that creditable service is for "*municipal firefighter service*," defined as "service with the fire department of a participating municipality for which the applicant established creditable service under [Article 7]." (Emphasis added.) 40 ILCS 5/7—139.10 (West 2006). A "municipality" under Article 4 is "[a]ny city, township, village or incorporated town of 5,000 or more but less than 500,000 inhabitants, and any fire protection district having any *full-time paid firefighters*." (Emphasis added.) 40 ILCS 5/4—103 (West 2006).

Here, although the Village adopted an ordinance in 1957 which "created and established a fire department," that same ordinance explicitly called for members of the fire department to be part-time. Prior to 1995, no full-time fire department for the Village existed, and the plaintiffs were full-time employees for the Village in job descriptions other than firefighters, and thus, could not have been serving as full-time firefighters in a Village fire department. Further, there is no evidence in the record that any firefighters were appointed by the board of fire and police commissioners prior to 1995. Up until 1995, fire protection services were provided by Barrington, Inc., of which Feit and McLear were members while working full-time for the Village in the aforementioned capacities. Because the Village had no full-time paid firefighters prior to 1995, it was not a "participating municipality" under the statutory provisions of Article 4. The plaintiffs were

not firefighters within the definition of Article 4 and, therefore, could not have accumulated any creditable service for municipal firefighter service under the firefighters' pension fund statute. Instead, the plaintiffs' service credits earned during their employment prior to 1995 were correctly contributed to the IMRF.

We agree with the trial court that even assuming the plaintiffs were firefighters as defined in the pension code prior to 1995, they were not *excluded* from participation in an Article 4 fund because it is undisputed that the Village did not even have an Article 4 firefighters' pension fund at that time. See 40 ILCS 5/4—108.4(b) (West 2006).

The plaintiffs also contend that prior to 1995, they were required to complete training through the Office of the State Fire Marshal for firefighter certification programs, and that they were otherwise held out to the public by the Village as firefighters for the Village. Thus, they argue, they were "certified" by the Office of the State Fire Marshal as firefighters prior to 1995, and that they were firefighters within the meaning of the relevant statutes.

The plaintiffs have not cited any authority to support the proposition that any time a city holds out or otherwise misrepresents their employees to the public at large as firefighters or any other job designation, even when they are not, that such representation essentially transforms those individuals into firefighters or some other designation within the meaning of the pension statutes for the purpose of transferring pension funds. We agree with the trial court's holding:

"In contrast to [s]ections 4—108.4 and 4—106(b), the legislature in drafting the Illinois Fire Protection [Training] Act, 50 ILCS 740/1 *et seq.*, which provides for the training of fire protection personnel, gave firefighter an expansive definition. This Act defines firefighter and fire protection personnel in the same way as 'any person engaged in fire administration, fire prevention, fire suppression, fire education and arson investigation, including any permanently employed, trained or voluntary firefighter, whether or not such person, trained or volunteer is compensated for all or any fraction of his time.' 50 ILCS 740/2(e) (2008). Although this Act provides for training and obtaining certificates of education, the Firefighters' Pension Code does not refer specifically to this Act. Instead, the definition of firefighter in the Firefighters' Pension Code makes reference to Division 2.1 of the Municipal Code and defines firefighter narrowly. If [the] [p]laintiffs received training under this Act prior to their 1995 appointment, as they assert, it would be because they fell under its broad scope. Additionally, [t]he Village under its agreement with Barrington, Inc. was responsible for training Barrington, Inc. personnel including [the] [p]laintiffs Feit and Toussaint. Thus, this training would not make them 'certi-

fied in the same manner as a firefighter' as set forth in [s]ection 4—106 and [s]ection 10—2.1—4 of the Illinois Municipal Code."

We acknowledge the plaintiffs' dedication to public service. As counsel for the Village conceded during oral argument, the Village's actions in failing to enact an ordinance, which could and would allow the plaintiffs to transfer their pension funds as they seek to do, and its alleged misrepresentation in holding the plaintiffs out to the public as firefighters when it benefitted the Village to do so probably was not "moral." However, such behavior by the Village did not create a genuine issue of material fact as to application of the governing statutes. In other words, the Village's action may have been immoral but legal and so this court cannot overturn the trial court's grant of summary judgment in favor of the Village. For reasons that are unknown from the record, it is clear that the Village chose not to acknowledge the plaintiffs' lengthy service. The Village had options which it chose not to exercise. For example, the Village could have passed an ordinance that formed a bridge between the certification process that existed prior to 1995, through the training and certification by the Office of the State Fire Marshal, and the statutorily acknowledged process—*i.e.*, certification by the board of fire and police commissioners—that appointed firefighters starting in 1995. It did not. We also believe that it is disingenuous of the Village to imply as it did during oral argument that the plaintiffs' firefighting activities were done gratuitously during the course of their many years of employment and that they had a choice in whether to participate in fire-suppression activities in the course of their employment with the village in responding to a fire emergency.

Although we find merit to the plaintiffs' argument that the clear interpretation of the statutes yields an unfair result to them, based on the plain statutory language and our analysis, we find that the plaintiffs were not firefighters within the meaning of the pension statutes and, thus, were not entitled to a transfer of their pension funds for public service performed before 1995 pursuant to sections 4—108.4(b) and 7—139.10. Thus, we hold that the amendments to Article 4 (40 ILCS 5/4—108.4(b) (West 2006)) and Article 7 (40 ILCS 5/7—139.10 (West 2006)) are inapplicable to the plaintiffs.

Because the amendments to Articles 4 and 7 are inapplicable, the plaintiffs are not entitled to a declaratory judgment and *mandamus* relief, and the Village is not required to transfer the plaintiffs' pension funds and service credits accumulated prior to 1995 from the IMRF to the firefighters' pension fund. See *Read v. Sheahan*, 359 Ill. App. 3d 89, 98, 833 N.E.2d 887, 894-95 (2005); *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301, 803 N.E.2d 48, 52 (2003) (a petitioner requesting *mandamus*

relief must demonstrate a "clear right to the requested relief, the respondent's clear duty to act, and the respondent's clear authority to comply" with the terms of the *mandamus* order). Therefore, the trial court properly granted summary judgment in favor of the Village.

Affirmed.

KARNEZIS, P.J., and SOUTH, J., concur.