# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Wilkins v. Williams*, 2012 IL App (1st) 101805

---

| | |
|---|---|
| Appellate Court Caption | KAREN WILKINS, Plaintiff-Appellant, v. RHONDA WILLIAMS, Individually and as Agent of Superior Air Ground Ambulance Service, Inc., d/b/a Superior Ambulance Service, Inc., and Superior Air-Ground Ambulance Service, Inc., d/b/a Superior Ambulance Service, Inc., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1805 |
| Filed | March 20, 2012 |
| Rehearing denied | April 12, 2012 |
| Modified on denial of rehearing | April 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries suffered when plaintiff's car was struck by an ambulance defendant was driving in a nonemergency situation to transport a patient to a nursing home, the trial court's entry of summary judgment for defendant based on the finding that she was immune from liability under the Emergency Medical Services (EMS) System Act was reversed and the cause was remanded for further proceedings, since the immunity provided by the Act does not extend to third-party negligence claims based on the ordinary operation of a motor vehicle. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-12829; the Hon. Lynn M. Egan, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Hilbert, Lawler & Power, Ltd., of Chicago (Christopher E. Lawler, of counsel), and Law Offices of Lynn D. Dowd, of Wheaton (Lynn D. Dowd, of counsel), for appellant.<br><br>Williams Montgomery & John Ltd., of Chicago (Alyssa M. Reiter and Jeffrey H. Lipe, of counsel), for appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Karen Wilkins, appeals the order of the circuit court granting summary judgment in favor of defendants, Rhonda Williams, individually and as agent of Superior Air Ground Ambulance Service, Inc. (Superior), and Superior Air-Ground Ambulance Service, Inc., on Wilkins' negligence claim arising from a motor vehicle accident. On appeal, Wilkins contends (1) the trial court erred in granting summary judgment based on defendants' immunity from civil liability under the Emergency Medical Services (EMS) System Act (210 ILCS 50/2, 3.150(a), (b) (West 2006)) (EMS Act), where the EMS Act does not immunize defendants from liability for injuries sustained by third parties; and (2) genuine issues of material fact exist on whether Williams engaged in willful and wanton misconduct, rendering civil immunity under the EMS Act inapplicable to this case. On March 20, 2012, we filed an opinion after oral argument reversing the judgment of the trial court and remanding the case for further proceedings. Defendants filed a petition for rehearing on April 10, 2012. Upon denial of a rehearing, we issue this modified opinion.

¶ 2                                JURISDICTION

¶ 3    The trial court entered summary judgment in favor of defendants on May 27, 2010. Plaintiff filed a notice of appeal on June 25, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                BACKGROUND

¶ 5    Williams, an employee of Superior, was driving an ambulance engaged in the nonemergency transport of a patient to a facility when she collided with a vehicle driven by

Wilkins. Wilkins sustained serious injuries and filed a negligence claim against defendants. Defendants answered the complaint and filed two affirmative defenses. First, they asserted immunity from civil liability under the EMS Act because they were providing medical services to a patient at the time of the accident. Second, they asserted a comparative negligence count against plaintiff. Defendants filed a motion for summary judgment, and the following evidence was presented at the summary judgment proceedings.

¶ 6        Superior is licensed under the EMS Act to provide nonemergency and emergency medical services. Williams and Vernette Henderson are licensed emergency medical technicians (EMT) and employees of Superior. As an EMT, Williams was a first responder and provided precare to patients. When transporting a patient, she and her partner decide between themselves who will drive the ambulance and who will stay in the back with the patient. On November 14, 2005, Williams was driving an ambulance engaged in the nonemergency transport of a patient while Henderson attended to the patient. Williams drove the ambulance without emergency lights or sirens and proceeded westbound on 95th Street in Oak Lawn, Illinois. She was in the farthest right lane of three lanes and the traffic was flowing, not stop and go. An Avalanche truck was in the middle lane and a semitruck was in the farthest left lane. The semitruck obstructed her view of traffic going eastbound on 95th. Consequently, Williams did not see Wilkins' vehicle making a turn across the westbound lanes until she hit it and she did not apply the brakes before striking the car. Pursuant to standard procedure, Superior administered drug tests to Williams and Henderson and both passed.

¶ 7        Nasir Nasir testified in a deposition that he was driving a tow truck in the middle lane going westbound on 95th when he observed the accident. It was rush hour and dark outside. Traffic was heavy and he was stopped at a light because the traffic was backed up. Traffic in the right lane was moving, however, probably because vehicles were making right turns. Nasir saw Wilkins' car, traveling eastbound on 95th, attempting to make a left turn. There was no left-turn lane. The vehicles in the far left and middle lanes going westbound "let her car go" but as she attempted to cross over the far right lane the ambulance hit her. Nasir stated that he did not believe the ambulance was speeding. He could not recall whether a semitruck was in the far left westbound lane, but he did not think so because he could see oncoming traffic and the cars from his truck.

¶ 8        In her deposition, Linda Sedakis stated that on November 14, 2005, she was driving an Avalanche and had just pulled out of Christ Hospital after visiting her grandmother. She was westbound on 95th street in the middle lane, and the cars in the far left and middle had stopped for Wilkins' car. She did not recall any traffic on the right lane because most drivers used the lane as a right-turn lane and would not "sit in the right lane." As Sedakis approached the stoplight, she saw that it was red "for at least easily a minute." The vehicle in the far left lane was already stopped at the light. Sedakis stated that the vehicle was a car, not a truck, because if "it was a truck, [she] wouldn't be able to see past it to where [Wilkins'] car was." Space opened up in front of Sedakis, but she remained stopped because the vehicle in the far left lane was stopped, and Sedakis saw Wilkins with a left-turn signal and knew she wanted to make a turn. Wilkins turned in front of Sedakis and stopped for a "split second" before inching farther. Sedakis did not believe Wilkins could see around her Avalanche. As Wilkins

proceeded, Sedakis looked in her side view mirror and saw the ambulance approaching at about 35 to 40 miles per hour. It was not speeding. After the accident, she drove off but then returned to speak with a police officer. She told him that she did not believe the ambulance driver was at fault, nor could she blame the driver of the car. She also spoke with the ambulance driver and asked if she was alright. The driver informed her that she was transporting a patient.

¶ 9        Henderson in her deposition stated that on November 14, 2005, she and Williams were transporting a patient to a nursing home. It was a normal transport that did not require activating the lights or sirens on the ambulance. At the time of the accident, she was sitting in the captain's chair in the back with the patient. She monitored the patient's condition during transport. From her seat in the back, Henderson could not see the traffic on 95th Street. She only felt the impact of the accident when it occurred.

¶ 10       Wilkins testified that on the day of the accident, she was traveling eastbound on 95th and tried to make a left turn to go to a doctor's office. She does not have any memory of the collision, only that she awoke at Christ Hospital afterwards and remained there until January 2006. She suffered brain injury from the accident and continues to receive therapy and treatment.

¶ 11       James Pacetti, an officer with the Oak Lawn police department, stated in his deposition that he and Officers Michael Acke and James O'Brien went to the scene of the accident and conducted an investigation. They estimated that at the time of the collision, Wilkins was traveling at 18 miles per hour while Williams was traveling at 31 miles per hour. The speed limit on 95th Street where the accident occurred was 30 miles per hour. They concluded that speed was not a factor in the collision. They further determined that the ambulance hit Wilkins' car on the passenger side, and Wilkins was struck in the head by the ambulance.

¶ 12       The trial court granted summary judgment in favor of defendants, finding that the immunity provision of the EMS Act applied barring Wilkins' negligence claim. It determined that the plain and unambiguous language of the statute did not limit immunity to actions toward patients, but applied to acts affecting third parties as well. Wilkins filed this timely appeal.

¶ 13                                        ANALYSIS

¶ 14       Summary judgment is appropriate when the pleadings, affidavits, depositions and admissions in the record, when viewed in the light most favorable to the nonmoving party, reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *McLear v. Village of Barrington*, 392 Ill. App. 3d 664, 669-70 (2009). The interpretation of a statute presents a question of law suitable for resolution by summary judgment. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330 (2006). We review the trial court's grant of summary judgment *de novo*. *McLear*, 392 Ill. App. 3d at 669.

¶ 15       The issue here is whether Williams' actions in making a nonemergency transport of a patient to a facility is covered by the immunity provision of the EMS Act and, if so, whether the immunity extends to cover injuries sustained by innocent third parties not directly serviced by the emergency workers. This case is one of first impression since the parties have

not presented, nor have we found, any Illinois cases addressing whether immunity under the EMS Act extends to actions affecting third parties. Our determination rests on the interpretation of the EMS Act. The primary purpose in interpreting a statute is to ascertain and give effect to the legislature's intent. *In re B.L.S.*, 202 Ill. 2d 510, 514 (2002). Statutory language is the best indicator of legislative intent. *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill. App. 3d 1065, 1068 (1994). If the language is clear and unambiguous, courts need not resort to other aids of construction. *B.L.S.*, 202 Ill. 2d at 515.

¶ 16    Section 3.150 of the EMS Act provides:

> "(a) Any person, agency or governmental body certified, licensed or authorized pursuant to this Act or rules thereunder, who in good faith provides emergency or non-emergency medical services *** in the normal course of conducting their duties, or in an emergency, shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions, including the bypassing of nearby hospitals or medical facilities in accordance with the protocols developed pursuant to this Act, constitute willful and wanton misconduct." 210 ILCS 50/3.150(a) (West 2006).

¶ 17    Here, Williams stated in her depositions that at the time of the accident, she was the driver of an ambulance engaged in the nonemergency transport of a patient to a nursing care facility. She drove the ambulance in the course of her duties as an EMT for Superior. In *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 283 (2000), our supreme court noted that the transporting of patients is "an aspect of life support services" covered by the immunity provision of the EMS Act. In *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 345 (2008), the court reaffirmed its interpretation of the Act in *American National Bank*. It also noted that the legislature amended the EMS Act after *American National Bank* to broaden the scope of the statute since substitution of the phrase "emergency or non-emergency medical services" in the amended act for "life support services" encompassed not only medical services in response to an emergency, but also services provided in nonemergencies. (Internal quotation marks omitted.) *Abruzzo*, 231 Ill. 2d at 337. Furthermore, the amended statute defines nonemergency medical care as including "medical services given to patients during transportation to health-care facilities to obtain nonemergency services." *Abruzzo*, 231 Ill. 2d at 337. See also 210 ILCS 50/3.10(g) (West 2006). The amended statute was in effect at the time of the collision involving Williams and Wilkins. We find that according to the plain language of the EMS Act, the immunity provision applies to Williams' nonemergency transport of a patient to a nursing care facility.

¶ 18    Wilkins disagrees, arguing that the amended statute does not immunize the transporting of a patient because the phrase "for the purpose of transporting a patient" was removed from the reference to "the bypassing of nearby hospitals or medical facilities." Wilkins has waived review of this issue since she did not raise it before the trial court below. "[I]ssues not raised in the trial court may not be raised for the first time on appeal." *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 534 (1994). Nonetheless, our supreme court addressed this precise argument in *Abruzzo*, finding that the amended statute continues to refer to "the bypassing of nearby hospitals or medical facilities" and "[t]ransportation of patients is implied by that reference." (Internal quotation marks omitted.) *Abruzzo*, 231 Ill. 2d at 338. In fact, removing the phrase "broadened the statute because that phrase limited the immunity for bypassing

-5-

hospitals to circumstances when the purpose was to transport a trauma patient to a designated trauma center. Now the immunity for bypassing a hospital does not contain that specific limitation." *Id.* We are not persuaded by Wilkins' argument that the EMS Act's immunity provision does not apply to Williams' nonemergency transport of a patient to a nursing home.

¶ 19    We must now determine whether the immunity extends to Williams' negligent operation of the ambulance as it affected third parties. The EMS Act "protects paramedics and emergency medical technicians from claims of mere negligence." *Meck v. Paramedic Services of Illinois*, 296 Ill. App. 3d 720, 725 (1998). A proper negligence claim must allege a duty owed by defendant, a breach of that duty, and that the breach proximately caused plaintiff's injuries. *Bermudez v. Martinez Trucking*, 343 Ill. App. 3d 25, 29 (2003). The duty owed to patients by EMTs such as Williams arises from the medical technician's provision of emergency or nonemergency medical services. See *Gleason v. Village of Peoria Heights*, 207 Ill. App. 3d 185, 188-89 (1990) (with the EMS Act, the legislature intended to encourage response by trained personnel to emergency situations without fear of liability for every bad occurrence).

¶ 20    This duty differs from that Williams owed as an ambulance driver to third-party motorists such as Wilkins. In her complaint, Wilkins' allegations centered on Williams' careless and negligent operation of a motor vehicle. Negligence claims based on the ordinary operation of a vehicle are premised "on the breach of the duties every driver owes to every other driver." *Currie v. Lao*, 148 Ill. 2d 151, 160-62 (1992). Therefore, to determine whether the EMS Act's immunity provision applies to bar Wilkins' claims here, we must ascertain whether the negligence contemplated by the provision includes negligence toward third parties based upon the ordinary operation of a motor vehicle.

¶ 21    The EMS Act is silent on this issue and its silence renders it ambiguous on the issue. *People v. Marshall*, 242 Ill. 2d 285, 297 (2011). "When the legislature is silent, a court may not fill a void through judicial interpretation." *Gabriel Builders*, 268 Ill. App. 3d at 1068. A court may, however, turn to extrinsic aids of statutory construction in such cases, including legislative history (*Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398 (2003)) and well-established rules of statutory construction (*People v. Easley*, 119 Ill. 2d 535, 539 (1988)). Furthermore, we presume that the legislature intended for two or more statutes relating to one subject "to be operative and harmonious." *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391-92 (1998). Such statutes "must be compared and so construed with reference to each other that effect may be given to all the provisions of each, if it can fairly and reasonably be done." *Id.* at 192. Therefore, other statutes with provisions addressing the duty of an emergency vehicle driver toward ordinary motorists may provide guidance in determining whether Williams is immune under the EMS Act from third-party claims based on the negligent operation of a motor vehicle.

¶ 22    The Illinois Vehicle Code (625 ILCS 5/11-205, 11-907 (West 2006)) specifically addresses the duty of emergency vehicle operators toward other motorists. Section 11-205 provides that when responding to an emergency call, the driver of an authorized emergency vehicle may disregard certain rules of the road and proceed past a red light or stop sign, or exceed the maximum speed limit. However, "[t]he foregoing provisions do not relieve the

driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons." 625 ILCS 5/11-205(e) (West 2006). Section 11-907(a) states that upon immediate approach of an emergency vehicle utilizing its audible and visual signals, the drivers of other vehicles "shall yield the right-of-way" and move to the right-hand edge of the road to permit the safe passage of the emergency vehicle. 625 ILCS 5/11-907(a)(2) (West 2006). Section 11-907(b) provides, however, that the section "shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11-907(b) (West 2006). The legislature clearly intended that even in the emergency operation of an authorized vehicle, the driver must maintain a due regard for the safety of other motorists.

¶ 23 To give full effect to the Vehicle Code, the EMS Act cannot be read to immunize ambulance drivers from third-party claims of negligence in the ordinary operation of a motor vehicle. To allow such immunity would render meaningless the Vehicle Code's provisions that the driver of an authorized emergency vehicle must drive with due regard for the safety of all other drivers. It follows that in order to harmonize the Vehicle Code with the EMS Act, the immunity provision of the Act does not extend to the negligent operation of a motor vehicle resulting in injuries to third parties. Construing the EMS Act in this manner also comports with the general rule that the grant of immunity from civil liability is in derogation of the common law and such provisions must be strictly construed against the entity claiming immunity. *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991). See also *Currie*, 148 Ill. 2d at 160 ("claims based on the negligent operation of an automobile by a State employee are generally outside the doctrine of sovereign immunity").

¶ 24 Further support for this interpretation is found in the fact that when the legislature wanted to immunize the negligent operation of a motor vehicle, it clearly expressed its intent in the statute. For example, section 5-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2006)) states:

"Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2006).

The legislature wanted to immunize public employees' and entities' negligent operation of a motor vehicle in an emergency, and it expressly stated its intent in the Tort Immunity Act. See also *Young v. Forgas*, 308 Ill. App. 3d 553, 560 (1999) (the court found no conflict between the Vehicle Code and the Tort Immunity Act, reasoning that "[u]nder the plain language of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employees" in the operation of an emergency vehicle, but not to private employees). The EMS Act, however, contains no such provision. For the reasons heretofore stated, we hold that the immunity provided in the EMS Act does not extend to third-party negligence claims based on the ordinary operation of a motor vehicle, and the trial court erred in granting summary judgment in favor of defendants on that basis.

¶ 25 Defendants disagree, contending that the EMS Act should be interpreted broadly to

provide emergency medical personnel immunity from claims by third parties. They claim that a broad interpretation of the statute is supported by *Abruzzo* and *Brock v. Anderson Road Associates*, 301 Ill. App. 3d 168 (1998). These cases, however, are distinguishable from the case at bar.

¶ 26        In *Abruzzo*, the plaintiff filed a complaint alleging that EMTs were dispatched to attend to her unresponsive minor son, but they left without examining him or providing any treatment. *Abruzzo*, 231 Ill. 2d at 327-28. Our supreme court stated that since both the EMS Act and the Tort Immunity Act applied to the plaintiff's claims, it had to decide which act governed the case. *Id.* at 346. It concluded that "[t]he broad purposes, comprehensive scheme, and entire structure of the EMS Act indicate an intent for the immunity provision from that Act to govern cases involving emergency medical services." *Id.* at 347. *Abruzzo*, however, involved government-employed EMTs' negligent acts toward a patient. The *Abruzzo* court never reached the issue of whether the immunity provision of the EMS Act also applied to negligent acts affecting third parties.

¶ 27        In *Brock*, the plaintiff's husband worked as a carpenter's apprentice at a jobsite developed by the defendants. *Brock*, 301 Ill. App. 3d at 170. While working, the husband suffered a heat-related illness and subsequently died. *Id.* Plaintiff filed a complaint against the developers, as well as the EMTs who transported her husband. The trial court dismissed the negligence complaint against the EMTs, and this court affirmed the dismissal, determining that the EMTs were immune pursuant to the EMS Act. The developers then filed counterclaims seeking contribution from the fire department and the EMTs. *Id.* at 170-71. This court determined that "the policy considerations supporting immunity pursuant to the EMS Act outweigh those supporting the right to contribution." *Id.* at 174. It reasoned that to allow this contribution action would permit a "third party a wider basis for recovery" because a third party could recover for negligence while a plaintiff is limited to recovery for willful and wanton misconduct. *Id. Brock* is distinguishable because although the case involved a third-party contribution claim against the EMTs, the initial liability faced by the EMTs stemmed from their negligent actions toward a patient. The parties did not question whether the immunity provision of the EMS Act applied to the EMTs' actions. The issue before us, however, is whether the provision even applies where the actions of an EMT injure a third party rather than a patient. Accordingly, we are not persuaded that *Abruzzo* and *Brock* support defendants' contention.

¶ 28        Defendants also urge that this court look to the Tort Immunity Act for guidance. They argue that courts have applied the Tort Immunity Act to bar claims by injured third parties stemming from automobile collisions. Defendants cite *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360 (2007), and *Williams v. City of Evanston*, 378 Ill. App. 3d 590 (2007), as support. In *Shuttlesworth*, the plaintiff's vehicle collided with a police car while the police were pursuing a subject. The court had to determine whether section 2-109 of the Tort Immunity Act, which immunized the negligent actions of public employees engaged in the enforcement of the law, applied to the plaintiff's claim. *Shuttlesworth*, 377 Ill. App. 3d at 362-63. *Shuttlesworth* is inapposite in that the case before us does not involve actions performed in the enforcement of the law. In *Williams*, a motor vehicle collided with an Evanston fire department ambulance while the ambulance was responding to an emergency

call. This court determined that section 5-106 of the Tort Immunity Act, which immunizes public entities and employees from liability for negligent operation of a motor vehicle when responding to an emergency, applied. *Williams*, 378 Ill. App. 3d at 596. As discussed above, section 5-106 evidences the legislature's clear intent to immunize public entities and employees in the operation of an emergency vehicle. There is no comparable provision in the EMS Act, which is the relevant statute here. Neither *Shuttlesworth* nor *Williams* supports defendants' argument.

¶ 29 Due to our disposition of the case, we need not address plaintiff's contention that genuine issues of material fact exist regarding whether Williams engaged in willful and wanton misconduct, rendering the EMS Act's immunity provision inapplicable to the case at bar.

¶ 30 In a petition for rehearing filed by defendants, they assert that our reliance on the Illinois Vehicle Code as a basis to vacate the circuit court's grant of summary judgment is improper where the parties' briefs did not address the Vehicle Code. We beg to differ.

¶ 31 The issue of the applicability of the Vehicle Code to the instant case was manifestly at issue from the beginning of the case. Both parties' briefs cited numerous motor vehicle accident cases. Every accident involving a motor vehicle implicates the Vehicle Code. Consequently, we reject their argument that the issue was waived.

¶ 32 For the foregoing reasons, the judgment of the circuit court is reversed and the matter is remanded for further proceedings.

¶ 33 Reversed and remanded.